UNITED STATES of America,
Plaintiff–Appellee,

v.

Grant S. MAXWELL, Defendant–
Appellant.

No. 91–4011.

United States Court of Appeals,
Tenth Circuit.

May 28, 1992.

David J. Jordan, Asst. U.S. Atty. (Dee Benson, U.S. Atty., Richard D. Parry, Asst. U.S. Atty., with him on the brief), Salt Lake City, Utah, for plaintiff-appellee.

Harry Caston (Shawn D. Turner, with him on the brief) of McKay, Burton & Thurman, Salt Lake City, Utah, for defendant-appellant.

Before LOGAN and BRORBY, Circuit Judges, and OWEN,[*] District Judge.

BRORBY, Circuit Judge.

Defendant Grant Scott Maxwell appeals his conviction following a jury trial on single counts of possessing marijuana with intent to distribute and carrying a firearm during a drug trafficking crime, in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 924(c)(1) (Supp.1990), respectively.

Mr. Maxwell raises three claims of error. He asserts: (1) his attorney's failure to interview and call expert witnesses on his behalf constituted ineffective assistance of counsel; (2) the police department's referral of his case to federal court rather than state court violated his constitutional right to procedural due process and (3) the district court imposed an excessive period of supervised release. We affirm Mr. Maxwell's conviction and sentence.

On October 29, 1989 police officers responded to a report of an unconscious male in an automobile parked outside a service station. The first officer on the scene found Mr. Maxwell slumped in the driver's seat with his foot on the accelerator, the car's transmission in park and the engine racing. When the officer reached through the front window and turned off the engine, Mr. Maxwell awoke. Mr. Maxwell appeared incoherent and vacillated between normal speech and abstract "off the wall" dialog unrelated to the situation. The officer noticed an empty knife scabbard on the front seat, but observed no knife. A quick pat-down search of Mr. Maxwell's clothing for weapons revealed a plastic baggy containing a syringe, a prescription bottle and pills. The officer initially placed Mr. Maxwell under arrest for possession of drug paraphernalia and suspicion of driving under the influence of drugs or alcohol.[1] However, the drug distribution and weapons charges arose after officers found a partially open gym bag in the car which contained approximately thirteen ounces of marijuana, assorted pills and a .22 caliber semiautomatic pistol loaded with seven rounds of ammunition. Mr. Maxwell unsuccessfully moved to suppress all evidence seized during the search, and a trial ensued.

Mr. Maxwell, a drug treatment counselor at a Salt Lake City area hospital specializing in substance abuse, portrayed himself as a troubled drug abuser struggling to curb a long-term drug addiction. Mr. Maxwell testified he bought the marijuana to help wean himself from a more serious $200–$300–a–week drug habit involving cocaine, Valium and other substances. He adamantly denied any intent to sell the drug. Mr. Maxwell also maintained he did not realize the bag contained a handgun, explaining his father inadvertently left it in the bag following a recent hunting trip. A hospital administrator from the facility where Mr. Maxwell worked testified the hospital previously helped Mr. Maxwell combat a substance abuse problem, but personnel observed no behavior indicating Mr. Maxwell involved himself in the distribution of illicit drugs.

In contrast, the prosecutor pursued testimony aimed at characterizing Mr. Maxwell as a drug dealer who desperately needed money to support an expensive cocaine addiction. Highlighting the government's case, an expert witness in narcotics enforcement testified the quantity of marijuana found in Mr. Maxwell's car—when viewed together with the weapon and other drug paraphernalia—represented a sales

---

[*] The Honorable Richard Owen, Senior District Judge for the Southern District of New York, sitting by designation.

1. Mr. Maxwell subsequently tested positive for cocaine and Valium.

quantity of the drug rather than a volume typically associated with personal use. The jury agreed, rejecting the lesser included offense of simple possession of marijuana and opting for a guilty verdict on the more serious charge of possession with intent to distribute the drug.

Mr. Maxwell petitioned for a new trial, contending his attorney's failure to call expert witnesses to testify that habitual drug users commonly possess thirteen ounces of marijuana for personal use constituted ineffective assistance of counsel. To support his claim, Mr. Maxwell provided the district court with signed affidavits from two psychiatrists and a physician certified in addiction medicine attesting that habitual users of marijuana often seek out as much of the drug as possible. Nevertheless, the district court denied the motion. The district court found Mr. Maxwell did not show his attorney exercised less than the "skill, judgment, and diligence of a reasonably competent defense attorney." The court also found Mr. Maxwell failed to demonstrate that but for his attorney's alleged incompetence, the trial would likely have resulted in a different verdict. Mr. Maxwell responded with a motion to depart from the United States Sentencing Guidelines' (Guidelines) minimum mandatory sentence on the weapons charge, claiming the police department's referral of the case to federal prosecutors violated his due process rights. The district court denied the motion, sentencing Mr. Maxwell to six months in prison for the drug offense and a consecutive five year minimum mandatory prison term for the weapons charge. The district court imposed six years of supervised release following his release from prison.

## I

On appeal, Mr. Maxwell renews his claim that his attorney represented him so ineffectively that fairness dictates a new trial. He asserts that although his attorney recognized a need for expert testimony that thirteen ounces of marijuana represented a typical quantity for a drug addict's personal use, counsel failed to secure available witnesses for trial. As a result, Mr. Maxwell maintains he was unable to counter the government's allegation that the quantity of marijuana evidenced his intent to distribute the drug. Moreover, Mr. Maxwell claims his attorney could not make a reasonable strategic decision to forego expert testimony because he interviewed only one of five individuals defendant recommended as experts. In sum, defendant contends the jury probably would not have convicted him on the distribution charge had his attorney secured expert testimony from available medical practitioners specializing in substance abuse.

■ Most claims challenging the effectiveness of defense counsel in a federal criminal trial are brought during habeas proceedings pursuant to 28 U.S.C. § 2255. *See Beaulieu v. United States*, 930 F.2d 805, 806–07 (10th Cir.1991). However, because post trial proceedings here developed a factual record of sufficient depth and detail for review of "the tactical reasons for trial counsel's decisions, the extent of trial counsel's alleged deficiencies, and the asserted prejudicial impact on the outcome of the trial," we may resolve the matter on direct appeal. *Id.* at 807. A claim of ineffective assistance of counsel raises a mixed question of law and fact which requires "us to view the 'totality of the evidence before the judge and jury.'" *United States v. Miller*, 907 F.2d 994, 997 (10th Cir.1990) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980)); *see also Laycock v. New Mexico*, 880 F.2d 1184, 1187 (10th Cir.1989) (ineffective assistance of counsel claims subject to de novo review). Because the Sixth Amendment right to counsel embodies the right to the effective assistance of counsel, we must overturn any conviction where counsel's actions "so undermined the proper functioning of the adversarial process" that legitimate questions remain whether the trial produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984).

■ To succeed with a claim of ineffective assistance of counsel, a defendant must demonstrate "his attorney's perform-

ance fell below an objective standard of reasonableness" *and* that but for counsel's deficiencies a reasonable probability exists the proceedings would have resulted in a different verdict. *Miller,* 907 F.2d at 997; *see also United States v. Rhodes,* 913 F.2d 839, 844 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991). Restated, Mr. Maxwell must show his attorney's performance was both substandard and prejudicial to his defense, taking into account the strength of the government's case. *United States v. Rivera,* 900 F.2d 1462, 1474 (10th Cir.1990). Trial strategies necessarily evolve without the benefit of hindsight. Accordingly, we afford a high level of deference to the reasonableness of counsel's performance in light of all the circumstances at the time of the alleged error. *See Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986); *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2065; *Miller,* 907 F.2d at 997. The ultimate inquiry, of course, focuses " 'on the fundamental fairness proceeding.' " *Miller,* 907 F.2d at 997 n. 6 (quoting *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069).

Mr. Maxwell's trial attorney, Mr. Randall Cox, admitted during a post trial hearing that his client gave him the names of "quite a few" character witnesses. Mr. Cox testified that he elected not to pursue those individuals, however, because his client's character was not in issue. Instead, Mr. Cox contacted at least four potential experts, including a psychiatrist specializing in addictive medicine and a fellow counselor at the drug treatment facility where defendant worked, but all refused to testify that thirteen ounces of marijuana represented an amount typically associated with personal use.[2] Although one specialist appeared willing to testify as to the underlying reason for Mr. Maxwell's reliance on marijuana, Mr. Cox saw little benefit from her probable testimony. Attempts to locate a desired expert through an investigator for the Salt Lake County

Legal Defenders Association and Mr. Maxwell's former employer also failed. With little hope of finding better than an equivocal witness, Mr. Cox made no further attempts to locate a substance abuse specialist. He explained that any testimony that focused on Mr. Maxwell's lack of propensity to distribute marijuana might jeopardize his efforts to exclude all references to Mr. Maxwell's prior conviction for distributing drugs.

At trial, Mr. Cox pursued a strategy aimed at portraying Mr. Maxwell as a chronic drug abuser rather than a distributor. He attempted to diffuse the strength of the government's expert witness by eliciting testimony that bulk purchases of marijuana represent the norm for chronic drug abusers and generally result in cheaper prices than drugs bought in smaller quantities. For comparison, he introduced testimony that drug distributors, as opposed to personal users, often carry large amounts of cash, measuring scales to accurately weigh drugs for sale, and plastic ziplock baggies for repackaging typical sales quantities of the substance—none of which Mr. Maxwell possessed at the time of his arrest. Mr. Cox also called Mr. Maxwell's father to explain why he inadvertently left his handgun in the same gym bag Mr. Maxwell later used to carry the marijuana. Moreover, Mr. Maxwell freely admitted he purchased the thirteen ounces of marijuana hoping it would help break his long-term cocaine addiction.

Nevertheless, Mr. Maxwell insists expert testimony as to an addict's behavior remained essential to his case and claims little risk existed of exposing his eighteen-year-old conviction for distributing drugs. Although another attorney might have pursued the course advocated by Mr. Maxwell, we remain convinced he received nothing less than the fair and competent representation envisioned by the Sixth Amendment. Because countless ways exist to provide effective legal assistance in any given case,

---

**2.** Although Mr. Maxwell testified he gave his attorney the names of at least five expert witnesses, Mr. Cox appeared uncertain as to whether his client provided any of the names of those

individuals ultimately contacted. Mr. Cox denied any recollection of discussing with Mr. Maxwell other potential expert witnesses named by Mr. Maxwell at the post-trial hearing.

we cannot say Mr. Cox's strategy fell below professional standards of reasonableness. Even had counsel located a suitable expert, the government's case against Mr. Maxwell—consisting of a large quantity of marijuana in an automobile, a loaded handgun and Mr. Maxwell's crumbling financial status—remained formidable evidence of an intent to distribute the drug. In short, Mr. Maxwell fails to overcome the inherent presumption that his trial attorney's tactics fell squarely within the wide range of "'sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). Mr. Maxwell's inability to satisfy his burden of showing ineffectiveness under the first prong of the two-part *Strickland* test ends our inquiry. The district court did not err when it denied Mr. Maxwell a new trial.

## II

Next, Mr. Maxwell contends the government denied him due process of law when police referred his case to federal, rather than state prosecutors, thereby subjecting him to a five year minimum mandatory prison term under federal sentencing guidelines for the weapons charge. Mr. Maxwell asserts discretionary case referral is not a traditional police function, and, in effect, gives police unfettered sentencing power. Because the police department followed no established guidelines for referral, Mr. Maxwell suggests the police *may have* pursued federal prosecution for improper reasons. Mr. Maxwell's claims are of little merit.

We rejected the nearly identical due process argument in three recent cases. *See United States v. Williams,* 963 F.2d 1337 (10th Cir.1992); *United States v. Morehead,* 959 F.2d 1489, (10th Cir.1992); *United States v. Andersen,* 940 F.2d 593 (10th Cir.1991). Without proof "'that the choice of forum was improperly motivated or based on an impermissible classification as a matter of constitutional law,' [3] prosecution in a federal rather than a state court does not violate due process despite the absence of guidelines for such referral." *Williams,* 963 F.2d at 1342 (quoting *Morehead,* 959 F.2d at 1499). Moreover, when the evidence supports a defendant's conviction under more than one statute, mere influence by the penalties available upon conviction, standing alone, does not rise to a due process violation. *United States v. Thomas,* 884 F.2d 540, 544 (10th Cir.1989) (citing *United States v. Batchelder,* 442 U.S. 114, 125, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979)). Although police undoubtedly have some influence in charging decisions because they decide whether to refer the case to federal or state prosecutors, "[t]he ultimate decision whether to charge a defendant, and what charges to file ... rests solely with [the] prosecutors." *Andersen,* 940 F.2d at 597 (citing *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)). As noted in *Andersen,* "we will not assume that prosecutors are acting as 'rubber stamps' for charging decisions made by" police agencies. *Id.*

Mr. Maxwell asserts the referral *could have resulted* from an alleged animosity between the police department and the hospital that employed defendant. However, he provides no evidence police based their decision on impermissible factors.[4] Accordingly, we have no basis to find the government deprived Mr. Maxwell of due process.

3. A prosecutor cannot base charging decisions on factors such as "defendant's race, sex, religion, or exercise of a statutory or constitutional right." *Andersen,* 940 F.2d at 596 (citing *Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985)).

4. Mr. Maxwell suggests his referral to federal court amounted to retribution for the hospital's alleged claim that members of the police department suffered drug abuse problems. Mr. Maxwell points to newspaper clippings that quote the police chief as stating the hospital "should clean up their own doorstep before they come to us." The clippings also refer to "a stinging reprisal" the hospital received from police leaders. However, these articles alone hardly represent sound evidence police officials harbored improper motives when they referred Mr. Maxwell's case to federal rather than state prosecutors. Moreover, the articles refer to a reprisal against Mr. Maxwell's former employer, not Mr. Maxwell who was fired shortly after his arrest.

## III

The district court sentenced Mr. Maxwell on the drug conviction pursuant to 21 U.S.C. § 841(b)(1)(D) (Supp.1990) which states, in pertinent part:

Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of [a prior drug-related conviction under state, federal or foreign law], impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of *at least 4 years*....

(Emphasis added). Although both parties agree the district court referred to the proper statute for sentencing purposes, they disagree as to the term of supervised release applicable to Mr. Maxwell. Mr. Maxwell contends the district court incorrectly sentenced him to six years of supervised release following his discharge from prison. Although Mr. Maxwell concedes his 1978 conviction for uttering a forged prescription arguably falls within the enhanced supervised release penalties, he maintains the district court made no specific finding whether this conviction warranted an enhanced supervised release period.[5] Even if enhanced penalties apply, Mr. Maxwell asserts the maximum statutory period of supervised release is four years. The government counters that Mr. Maxwell's sentence falls within the allowable range of supervised release because the statute mandates only a minimum four year term for defendants with prior drug-related convictions, but specifies no maximum limit.

In its written sentencing order, the district court did not specify whether the six year period of supervised release resulted solely from Mr. Maxwell's conviction on the marijuana count or whether it stemmed also from the weapons conviction.[6] Nevertheless, we find the six year period is within the *possible* range of supervised release allowed by the Guidelines.

Section 5D1.2(a) of the Guidelines states "[i]f a defendant is convicted under a statute that requires a term of supervised release, the term shall be at least three years but not more than five years, or the minimum period required by statute, *whichever is greater.*" *Id.* (emphasis added). Assuming the supervised release period ordered for Mr. Maxwell arose out of his conviction on the drug charge alone, the maximum period of supervised release allowed by the Guidelines would remain fixed at five years because it exceeds the four year minimum term mandated by § 841(b)(1)(D) of the Anti–Drug Abuse Act of 1986. *Compare* 21 U.S.C. § 841(b)(1)(D) (1988) *with* U.S.S.G. § 5D1.2(a). Under such circumstances, a six year supervised release period would clearly fall outside the Guidelines' allowable range.

However, Mr. Maxwell faced sentencing on not one, but two separate convictions. The weapons charge generated a minimum mandatory sentence of five years in prison which shall not "run concurrently with any other term of imprisonment." 18 U.S.C. § 924(c)(1) (Supp.1990). Although the statute does not mandate a term of supervised release, "[t]he [district] court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a) (1988). In situations where a court imposes a prison term exceeding one year, it *"shall order* a term of supervised release to follow imprisonment."* U.S.S.G. § 5D1.1(a) & comment (emphasis added). Given that the district

---

**5.** "Prior convictions" subject to enhanced penalties include any previous sentence of imprisonment exceeding one year and one month that a court imposed within fifteen years "of the defendant's commencement of the instant offense." U.S.S.G. § 4A1.2(e)(1).

**6.** We are unable to ascertain whether at the time of sentencing the district court articulated its reasons for imposing a six year period of supervised release pursuant to 18 U.S.C. § 3553(c) because Mr. Maxwell's appellate counsel did not provide this court with a transcript of those proceedings. Nor did we receive a copy of Mr. Maxwell's presentence report. Tenth Circuit Rules require both records for a defendant's challenge to the district court's sentence. *See* Tenth Cir.R. 10.2.3 and R. 10.2.9.

court must impose a supervised release term for the weapons conviction, we need only determine the allowable range and whether authority exists to stack consecutive periods of supervised release.

Absent a defined term of supervised release in the statute describing the substantive offense, we turn first to 18 U.S.C. § 3559 for guidance in classifying the weapons charge. The mandatory five year prison term for a first-time offense of carrying a handgun during the commission of a drug trafficking crime represents a Class D felony under the criminal code's offense classification scheme.[7] Next, we revisit 18 U.S.C. § 3583(b) and the Guidelines pertaining to the authorized terms of supervised release for specific classifications of crimes. Pursuant to § 3583(b)(2) and U.S.S.G. § 5D1.2(b)(2), the district court may impose a period of supervised release not to exceed three years on a Class D felony.[8]

With this in mind, we examine the propriety of stacking consecutive terms of supervised release for multiple convictions. Neither the statutes at issue nor the Guidelines specifically address consecutive stacking of supervised release periods. However, Congress clearly intended consecutive penalty schemes for weapons violations under § 924(c), stating that when sentencing on multiple counts the sentence imposed "on a count for which the statute mandates a consecutive sentence shall be determined and imposed *independently*." U.S.S.G. § 5G1.2(a) (emphasis added). The Sentencing Commission's commentary accompanying § 5G1.2 notes that "[c]ounts for which a statute mandates a consecutive sentence, *such as counts charging the use of a firearm (18 U.S.C. § 924(c)* ) are treated separately [and] ... run[ ] consecutively to the sentences imposed on the other counts."

Section 5G1.2, comment (emphasis added). In regard to consecutive sentences controlled by § 5G1.2, the Guidelines make no distinction between imprisonment and supervised release.

Consequently, we see nothing that precludes the district court from imposing a term of supervised release on the weapons charge, consecutive to that which it imposed on Mr. Maxwell's drug conviction. *See United States v. Saunders*, 957 F.2d 1488, 1494 (8th Cir.1992); *United States v. Torres*, 901 F.2d 205, 248–251 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990); *United States v. Gordon*, 901 F.2d 48, 49 (5th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990); *United States v. Bakhtiari*, 729 F.Supp. 11, 13 n. 1 (S.D.N.Y.1989), *aff'd* 913 F.2d 1053 (2d Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991). Mr. Maxwell points us to no contrary authority, nor has he demonstrated the district court misapplied the Guidelines. A district court possesses broad discretion to impose a particular sentence falling within the Guidelines range, and we review only for "facial illegality, improper calculations, or clearly erroneous fact findings." *United States v. Garcia*, 919 F.2d 1478, 1481 (10th Cir.1990). *See also* 18 U.S.C. § 3742(a) (1988). We find no error.

Mr. Maxwell faced a maximum potential of eight years supervised release under both convictions. As a result, the six year term imposed by the district court rests firmly within the applicable statutory and Guidelines range. For these reasons, the judgment of the district court is AFFIRMED.

---

7. 18 U.S.C. § 3559(a) states that "[a]n offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is ... less than ten years but five or more years, as a Class D felony." 18 U.S.C. § 3559(a)(4) (1988).

8. Except as otherwise provided by statute, the authorized terms of supervised release are: "for a Class C or Class D felony, not more than three years." 18 U.S.C. § 3583(b)(2) (1988). *See also* U.S.S.G. § 5D1.2(b) (stating that an ordered term of supervised release for an offense not mandating a period of supervised release shall be "at least two years but not more than three years for a defendant convicted of a Class C or D felony." U.S.S.G. § 5D1.2(b)(2)).