**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 11 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LAWRENCE J. ESPINOSA,

      Petitioner - Appellant,

v.

JOE WILLIAMS, Warden,
ATTORNEY GENERAL OF THE
STATE OF NEW MEXICO,

      Respondents - Appellees.

No. 96-2077
(D.C. No. CIV-92-698-MV)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **HENRY** and **LUCERO**, Circuit Judges.


      In January 1987, Lawrence Espinosa was indicted by a New Mexico grand

jury on numerous charges arising out of the murder of Oscar Barajas and an

attempted armed robbery at a Howard Johnson's motel in Albuquerque.

Following a two-day jury trial, Espinosa was convicted of felony murder,

attempted armed robbery, kidnapping and false imprisonment.  He was sentenced

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel.  This court generally disfavors the citation of orders
and judgments; nevertheless, an order and judgment may be cited under the terms and conditions
of 10th Cir. R. 36.3.

to life imprisonment plus fifteen years and six months. On July 6, 1992, Espinosa filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 which was dismissed with prejudice. Espinosa now appeals this dismissal. He maintains that his attorneys' performance at trial violated his Sixth Amendment right to effective assistance of counsel and that certain instructions given to the jury regarding felony murder warrant reversal of his conviction. We exercise jurisdiction under 28 U.S.C. § 2253 and affirm.

## I

A claim of ineffective assistance of counsel presents a mixed question of law and fact which is reviewed de novo. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995). In order to prevail, Espinosa must satisfy both parts of the test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984): "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." As this circuit has interpreted Strickland, Espinosa must demonstrate

> that his attorney's performance fell below an objective standard of reasonableness and that but for counsel's deficiencies a reasonable probability exists the proceedings would have resulted in a different verdict. Restated, [he] must show his attorney's performance was both substandard and prejudicial to his defense, taking into account the strength of the government's case. Trial strategies necessarily evolve without the benefit of hindsight. Accordingly, we afford a high level of deference to the reasonableness of counsel's performance in light of all the circumstances at the time of the

alleged error.  The ultimate inquiry, of course, focuses on the fundamental fairness of the proceeding.

United States v. Maxwell, 966 F.2d 545, 547-48 (10th Cir. 1992) (internal quotations and citations omitted).

In evaluating counsel's performance, we are mindful that there is a "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Moreover, "prejudice" in this context means that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.  Unless both elements of Strickland are satisfied, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

Espinosa points to numerous omissions to demonstrate defense counsel's substandard performance.[1]  They include the failure to impeach the state's primary witnesses, to file motions in limine, to object to prejudicial testimony, and to present evidence concerning a possible third person at the crime scene.

**A**

The critical witnesses linking Espinosa to the crime were co-defendant and admitted accomplice, Simon Aragon, and Espinosa's friend, Henry Alderete. Espinosa contends trial counsel's cross-examination of Aragon and Alderete was

---

[1]Prior to denying Espinosa's habeas petition, the district court conducted an evidentiary hearing examining this claim, a transcript of which is included in the record on appeal.

inadequate and that counsel failed to call certain witnesses to impeach their testimony.

With respect to Espinosa's claim of ineffective cross-examination, we note that defense counsel emphasized to the jury that Aragon and Alderete received significant concessions from the state in return for their testimony. Counsel emphasized that both were admitted heroin addicts and convicted felons. Additional impeachment evidence therefore would have been of minimal utility to Espinosa.

Even were we to accept Espinosa's contention that trial counsel could have sought prospective witnesses more earnestly, our review of the record reveals that these witnesses would have had little impact on the outcome of the trial. As discussed above, counsel had already put into question Aragon and Alderete's credibility. Moreover, had they testified, each of the uncalled witnesses would have presented testimony contradicting Aragon and Alderete's testimony, but only as regarding Espinosa's whereabouts and activities well before or well after the commission of this crime. Their testimony—even if believed by the jury—would have had only peripheral impeachment value.

.                                              **B**

Espinosa contends trial counsel unreasonably failed to file motions in limine to exclude certain evidence. Deciding whether to file such motions "is

clearly part of the process of establishing trial strategy. A defendant may prevail on an ineffective assistance claim relating to trial strategy only if he can show counsel's strategy decisions would not be considered sound." Jones v. Stotts, 59 F.3d 143, 146 (10th Cir. 1995). We agree with the district court's assessment that

> counsel did not err by not filing motions in limine. Counsel were experienced with the practices and procedures of the trial judge and raised [evidentiary matters] in pretrial conference. The judge advised that objections should be made at trial . . . . There are alternative ways of bringing concerns to the court's attention besides the filing of papers.

Vol. I, Doc. 120 at 25; see Evidentiary Hr'g Tr. 1-3-95 at 82-83, 129, 146, 154, 274-75.

## C

At trial, Aragon testified he saw Espinosa in jail following the murder, and spontaneously added that Espinosa was in custody for a different charge, "trying to rob a taxicab or assaulting a taxicab or something like—." Trial Tr. at 114. Defense counsel objected and moved for a mistrial. The trial court denied the motion on the grounds that the prosecution had taken steps to prevent disclosure of this information, and that defense counsel could have acted more diligently in opposing the line of questioning leading to Aragon's unsolicited statement.

We agree with Espinosa that counsel's sluggish reaction could be described as substandard attorney performance under Strickland. However, we do not find prejudice of a constitutional magnitude. No further reference was made to this

-5-

outburst and, in light of the other evidence presented, there does not appear to be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.[2]

**D**

A witness to the crime informed police that, in addition to the two male intruders, there may have been an Hispanic female present at the crime scene. Espinosa maintains his attorneys failed to properly investigate his suggestion to them that Aragon's girlfriend, Frances Montoya, may have been the third suspect in question. In evaluating this claim, we note that defense counsel is required "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.

Counsel explained during the evidentiary hearing that members of the defense team conducted an investigation but were unable to locate Montoya. Espinosa countered by introducing the testimony of an investigator with the Federal Public Defender's office, who had been able to do so several years later. When asked whether it was easy to locate Ms. Montoya, however, the investigator stated, "[n]ot really." Evidentiary Hr'g Tr. 12-14-94 at 118. Thus we cannot conclude that counsel's investigation was unreasonable.

---

[2]Espinosa also contends that trial counsel erred in failing to object to the introduction of evidence at several other times during the trial. We conclude, after reviewing the record, that defense counsel's performance as to these evidentiary matters did not constitute ineffective assistance of counsel under Strickland.

Trial counsel's ability to conduct a more thorough investigation was substantially impeded by Espinosa's mercurial version of events. He initially told his attorneys that he was the third person at the scene, later admitted he was the gunman, and later still resorted to the alibi he now asserts, namely that he spent the night in question with an unidentified man. Espinosa's failure to provide his attorneys with more consistent information bars the conclusion that defense counsel failed in their investigative duties. See Strickland, 466 U.S. at 691.

Espinosa contends defense counsel's opening statement improperly theorized about a third person's involvement in the crime.[3] Espinosa claims this constitutes substandard lawyering because it left the possibility of a third participant, perhaps Espinosa, "just hanging out there." Appellant's Br. at 39. We disagree. "[T]o rise to the level of constitutional ineffectiveness, [counsel's] decision . . . must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy." Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997) (internal quotations omitted), cert. denied, 66 U.S.L.W. 3257 (U.S. Oct. 6, 1997) (No. 96-9364). Counsel was aware that a third suspect could—and probably would—be mentioned during the course of trial and may have mentioned the third person in order to pre-empt the issue. Additionally,

_____

[3]For purposes of analysis, we accept as true Espinosa's contention that a third suspect was mentioned during the defense's opening statement. Apparently, however, that statement was never transcribed. See Evidentiary Hr'g Tr. 12-14-94 at 30-31. Consequently, it is not contained in the appellate record.

the testimony regarding the third person at the scene described the individual as "20 to 23 years old . . . [a] Spanish female . . . shorter than [the witness] in build, had a light complexion, black, medium-length hair [which was] pulled back [with] no bangs." Trial Tr. at 162. It is unlikely the jury would have inferred that that person was Espinosa. Finally, counsel's reference to a third suspect may have benefitted the defense by casting doubt on Aragon's testimony that only he and Espinosa were involved in the commission of these crimes.

Even were we to assume counsel's performance in this case fell outside the wide range of professionally competent assistance, such errors would not undermine our confidence in the outcome. We cannot say that Espinosa was deprived "of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Consequently, we affirm the district court's decision to dismiss Espinosa's claim of ineffective assistance of counsel.

**II**

Several years after Espinosa was convicted, the New Mexico Supreme Court reexamined the state's felony murder statute in State v. Ortega, 817 P.2d 1196 (N.M. 1991). The Ortega court construed the statute "as requiring proof that the defendant intended to kill the victim (or was knowingly heedless that his or her acts created a strong probability of death or great bodily harm)" thus removing the statute from the "threat of unconstitutionality." Id. at 1204-05.

-8-

Felony murder in New Mexico therefore requires a finding of intent to kill, as thus defined, in addition to the intent to commit the underlying felony. See State v. Hernandez, 846 P.2d 312, 329 (N.M. 1993). On appeal, Espinosa argues that the jury instructions in his case were improper because they did not require a finding that he possessed the requisite intent to kill. We need not decide whether Ortega applies retroactively because, even assuming it does and that the instructions were thus flawed, our independent review of the record leads us to conclude that such assumed error does not mandate habeas relief here.

The Supreme Court's decision in California v. Roy, 117 S.Ct. 337 (1996) (per curiam), addresses a similar legal issue and demarcates the parameters of our analysis. In Roy, the Court rejected the defendant's argument that an erroneous jury instruction mandated habeas relief. Id. at 338. The instruction at issue in Roy was erroneous under state law because it did not inform the jury that to sustain a guilty verdict, the jury must find that the defendant had intended to aid in the commission of the crime. As is the situation in this appeal, the Roy Court noted that "[n]o one claims that the error at issue here is of the 'structural' sort" and the Court characterized this "error in the instruction that defined the crime," as a "trial error." Id. at 339. As such, the appeal was "a case for application of the 'harmless error' standard as enunciated in Brecht [v. Abrahamson, 507 U.S. 619 (1993)] and O'Neal [v. McAninch, 513 U.S. 432 (1995)]." Id.

Under Brecht, a federal court reviewing a state court determination in a habeas corpus proceeding should apply the "harmless error" standard enunciated in Kotteakos v. United States, 328 U.S. 750 (1946)—"whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht, 507 U.S. at 637 (quoting Kotteakos, 328 U.S. at 776); see Roy, 117 S.Ct. at 338.  In O'Neal, the Supreme Court added that, in applying this standard in a habeas proceeding, if a reviewing court "is in grave doubt as to the harmlessness of an error," the habeas "petitioner must win."  513 U.S. at 437; see Roy, 117 S.Ct. at 338.

The jury in this case was instructed that it could only find Espinosa guilty of felony murder if it found that: (1) defendant committed kidnapping and caused the death of Mr. Barajas; or (2) defendant attempted to commit armed robbery and caused the death of Mr. Barajas; or (3) someone caused the death of Mr. Barajas and defendant was an accomplice to kidnapping and/or attempted armed robbery.[4] The jury was also instructed that to find Espinosa guilty of kidnapping, it had to find "defendant took or restrained [the kidnapping victim] by force; [and] . . . defendant intended to hold [the kidnapping victim] for service against her will." R. Proper at 71.

---

[4]All three of these instructions are erroneous under Ortega because none requires a finding that the defendant not only "caused" the death of Oscar Barajas, but also intended to do so.

The jury returned a guilty verdict as to felony murder, kidnapping and attempted armed robbery.[5] The jury also returned a unanimous special interrogatory verdict, finding that Espinosa committed murder in the course of both kidnapping and attempted armed robbery, and that he used a firearm in the course of the kidnapping.

Espinosa argues that, because the trial judge failed to instruct the jury on the element of intent to kill, the jury could have impermissibly found Espinosa guilty of murder based on accomplice liability—regardless of his intent to cause the death of Mr. Barajas. We are not persuaded. Under the kidnapping instruction given, the jury could not have found the defendant guilty of kidnapping as an accomplice. Our review of the record demonstrates that the only evidence presented to the jury is that the principal kidnapper was the gunman. Thus, the jury necessarily found that Espinosa was the gunman.

In Ortega, the New Mexico Supreme Court held that,

> intent to kill in the form of knowledge that the defendant's acts "create a strong probability of death or great bodily harm" to the victim or another, so that the killing would be only second degree murder . . . if no felony were involved, is sufficient to constitute murder in the first degree when a felony is involved . . . .

Ortega, 817 P.2d at 1205; see State v. Lopez, 920 P.2d 1017, 1020 (N.M. 1996) ("[O]ur felony-murder rule is best described as elevating the crime of second-

---

[5]The jury was also instructed on one count of false imprisonment, as to which it also returned a guilty verdict.

degree murder to first-degree murder when the murder is committed during the course of a dangerous felony."); see also N.M. Stat. Ann., § 30-2-1(B) (Michie 1978) (defining murder in the second degree). A jury in New Mexico can imply malice if it finds beyond a reasonable doubt that the killing was committed by means of a deadly weapon. See State v. Vigil, 533 P.2d 578, 583 (N.M. 1975); State v. Anaya, 460 P.2d 60, 62 (N.M. 1969).

Viewing the jury's findings in conjunction with a review of the record we find the erroneous instructions harmless. All the evidence shows that the gunman possessed the intent required for felony murder under New Mexico law. The record indicates that the gunman was aware that his acts created, at the very least, a strong possibility of great bodily harm. Eyewitnesses presented unrefuted testimony that the masked gunman entered the motel, pointed a gun at several individuals, pressed the gun to the head of the kidnapping victim, and made several threats to shoot bystanders if they did not comply with his orders. The murder victim was shot twice, once in the back, when he came to the aid of the kidnapping victim.

Based on this uncontroverted evidence and on New Mexico state law, we are not in grave doubt but that the jury's verdict encompassed a finding that defendant had the intent required for felony murder. Thus, we do not agree that the error "had substantial and injurious effect or influence" on the jury's verdict.

AFFIRMED.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge