**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 19 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GARY SHERMAN JONES,

     Petitioner-Appellant,

v.

JOHN SUTHERS, Executive Director
of Colorado Department of
Corrections,

     Respondent-Appellee.

No. 03-1414
(District of Colorado)
(D.C. No. 00-MK-1605 (CBS))

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

I.    **INTRODUCTION**

After a five-day trial, a Colorado jury found Gary Jones guilty of child

abuse and sexual assault on a child. In a postconviction motion in state court,

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Jones argued that his trial counsel's failure to retain and call an expert witness infringed his Sixth Amendment right to the effective assistance of counsel. After the state courts denied his claim, Jones filed an application for writ of habeas corpus under 28 U.S.C. § 2254. The district court denied the application and issued a certificate of appealability. Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(c), this court **affirms** the decision of the district court.

## II. BACKGROUND

Jones' convictions stem from the sexual abuse of his four-year-old stepdaughter, R.F. At trial, Jones' counsel did not attempt to dispute the medical evidence that R.F. had been sexually abused. Instead, she advanced the theory that R.F.'s biological father was the actual perpetrator of the abuse. R.F. and her six-year-old brother lived with their mother and Jones in Gypsum, Colorado, but visited their father in Denver on alternate weekends.

The prosecution's key witness at trial was Dr. Patrick Bacon, an expert in child psychiatry. Dr. Bacon testified extensively about approximately one hundred hours of videotaped therapy sessions he conducted with R.F. During the first eight weeks of these sessions, he testified that R.F. was anxious and unwilling to talk about the abuse. As she became more comfortable, Dr. Bacon testified that R.F. began speaking of a "bad guy" who was only bad when she was alone with him. R.F. also told Dr. Bacon on several occasions that Jones had hurt

her and that she was frightened by him. Approximately four and one half months after beginning therapy, R.F. first told Dr. Bacon that Jones had put his finger into her vagina. Jones' counsel vigorously cross-examined Dr. Bacon but did not call another expert witness in rebuttal.

The jury also heard from other witnesses linking Jones with the abuse. The girlfriend of R.F.'s father testified that when she asked R.F. if anyone had hurt or touched her, R.F. replied that "Gary said it's a secret." Dr. Hendrika Cantwell of Denver Social Services testified that she asked R.F. if someone had touched her in her vaginal area, and that R.F. responded "Gary does that." R.F.'s aunt testified that R.F. told her that Jones had hurt her "gina" "with his finger." R.F.'s father also testified at trial that R.F. told him she hated Jones because "he hurt [her] where [she goes] to the bathroom."

The jury found Jones guilty of sexual assault on a child and child abuse resulting in serious bodily injury to R.F.'s vagina. After his conviction was upheld on appeal, Jones filed a motion for postconviction relief in Colorado state district court. Jones argued that his counsel was ineffective for failing to hire an expert in child interview techniques to rebut Dr. Bacon's testimony. At an evidentiary hearing, Jones called Dr. John Yuille, a professor of psychology at the University of British Columbia who specializes in methods of interviewing children. Dr. Yuille reviewed the videotaped therapy sessions and criticized Dr.

Bacon's use of suggestive and repetitive questions, his decision to allow others in the room during therapy sessions, and his "very strong bias" against Jones. Dr. Yuille also found fault with Dr. Bacon's utilization of "play therapy," his conclusion that R.F. suffered from posttraumatic stress disorder, and his use of symbolic interpretation, such as his association between R.F.'s mention of snakes and phallic symbols. Dr. Yuille testified that Dr. Bacon's techniques were "seriously profoundly inappropriate" and were known to produce false allegations in children. He concluded that "this was an example of how not to conduct an investigative interview with a preschool aged child."

After the district court heard the testimony of Dr. Yuille, expert witnesses on both sides, and Jones' trial counsel, the court issued a written order denying Jones' motion. The Colorado Court of Appeals affirmed, and the Colorado Supreme Court denied certiorari.

Jones next filed a 28 U.S.C. § 2254 application for writ of habeas corpus in the United States District Court for the District of Colorado, raising five claims. The district court concluded that three of the claims were procedurally barred and denied the remaining two claims on the merits. Jones appeals only the district court's denial on the merits of his ineffective assistance of counsel claim.

## III. STANDARD OF REVIEW

Because Jones' claim was adjudicated on the merits in state court, Jones is entitled to § 2254 relief only if he can establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). This court presumes that state court factual findings are correct and places the burden on the habeas applicant to rebut this presumption with clear and convincing evidence. *Id.* § 2254(e)(1).

## IV. DISCUSSION

Jones claims on appeal that his Sixth Amendment right to the effective assistance of counsel was violated when his trial counsel failed to retain an expert witness to demonstrate that Dr. Bacon used improper interview techniques in his work with R.F. Jones argues that his counsel was deficient both in failing to investigate Dr. Bacon's methods with an expert before trial, and in failing to call an expert witness at trial to rebut Dr. Bacon's testimony.

### A. Failure to investigate

Jones first argues that the state courts erred by ignoring his claim that counsel failed to conduct an adequate pretrial investigation. The state district

court, however, did find that counsel had reviewed the approximately one hundred hours of videotaped therapy sessions and had recognized the need to carefully examine Dr. Bacon's methodology. Furthermore, the court found that counsel consulted with another experienced attorney and with psychologist Dr. Suzanne Bernhard in preparing for trial. The court noted that Dr. Bernhard did not find serious problems with Dr. Bacon's interview methods after reviewing a portion of the videotapes, but that counsel "received valuable information and advice on cross-examining Dr. Bacon and eliciting information favorable to the defendant." Recognizing that "[a]n attorney's decision not to interview certain witnesses, and to rely on other sources of information, if made in the exercise of reasonable professional judgment, does not amount to ineffective assistance of counsel," the court concluded that counsel's investigation under these circumstances was a reasonable exercise of professional judgment. These statements by the court indicate that it adequately considered and rejected Jones' failure-to-investigate claim on the merits.

Jones disputes the court's factual finding that his counsel reviewed the one hundred hours of videotaped sessions. He points out that counsel actually utilized teams of non-lawyers to conduct the review, consisting of her husband, staff from her office, Jones, and Jones' family. Fairly read, however, the state court's order is not inconsistent with the fact that counsel delegated some of the work to others.

The state court never suggested that counsel had reviewed all the tapes personally. Nor is it particularly significant that some delegation occurred. Counsel gave team members verbal and written instructions on how to review the tapes, and told them to notify her if they found anything of significance. Jones does not demonstrate why it would have been necessary for his counsel personally to review every hour of the videotaped sessions. Considering the enormity of the task, it was not unreasonable to delegate some of the work to lay volunteers.

Jones also disputes the factual bases behind the state court's conclusion that counsel's consultation with Dr. Bernhard constituted reasonable pretrial investigation. Jones claims that Dr. Bernhard was not qualified to critique child interview techniques, and that her review of only a small sample of the videotaped sessions was insufficient for her to form a reasonable opinion about Dr. Bacon's methods.[1] Jones has not produced any evidence, however, that Dr. Bernhard lacked the requisite qualifications. Trial counsel testified at the postconviction hearing that Dr. Bernhard was recommended by her supervisor as someone who had experience in child sexual assault issues and had testified

---

[1]The district court did not make explicit factual findings regarding Dr. Bernhard's qualifications or the adequacy of her review of the videotapes. These findings, however, were implicit in the court's conclusion that counsel's reliance on Dr. Bernhard was reasonable. The presumption of correctness of a state court's factual findings in the context of an application for writ of habeas corpus applies to implicit as well as explicit findings of fact. *Weeks v. Snyder*, 219 F.3d 245, 258 (3d Cir. 2000).

previously in sexual assault cases. Dr. Bernhard herself represented to Jones'

counsel that she was qualified to evaluate Dr. Bacon's methodology.[2] Nor has

Jones demonstrated that the portions of video selected by counsel for review by

Dr. Bernhard were unrepresentative of the sessions as a whole. Considering the

strong presumption of counsel's effectiveness, this court cannot presume that

counsel selected an inadequate sample. *See Strickland v. Washington*, 466 U.S.

668, 690 (1984). Jones has therefore failed to demonstrate that the state court's

findings were either unreasonable or contradicted by clear and convincing

evidence.

In addition to contending that the state court's order reflects an

unreasonable determination of the facts, Jones also argues that the court's

conclusion was both contrary to and an unreasonable application of *Strickland v.*

*Washington*. A state court determination is contrary to clearly established federal

law "if the state court applied a rule different from the governing law set forth in

---

[2]Jones attempts to rely on Dr. Bernhard's resume as evidence that she was unqualified. Although Jones is correct that Dr. Bernhard's resume contains no reference to formal training in child interview techniques, it does show that she had experience in child therapy, sexual abuse, and forensic psychology. Furthermore, counsel's supervisor testified at the postconviction hearing that Dr. Bernhard had wide experience dealing with sexual abuse and the interviewing of children. Standing alone, the resume is therefore insufficient to demonstrate that Dr. Bernhard lacked sufficient qualifications. *See Affinito v. Hendricks*, 366 F.3d 252, 258-59 (3d Cir. 2004) (holding that the determination of which psychiatric expert to consult is a tactical decision for which counsel is afforded wide latitude).

Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts." *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004) (quotation and alterations omitted). In its written order, the state district court properly explained that Jones' burden under *Strickland* was to show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *See Strickland*, 466 U.S. at 687. The court concluded that Jones had not met his burden under *Strickland*'s first prong because he had failed to demonstrate "that trial counsel's performance fell below an objective standard of professional conduct for criminal defense counsel." The court therefore did not consider whether Jones had established prejudice under *Strickland*'s second prong. Nothing in the Colorado district court's order is contrary to *Strickland*.

A state court unreasonably applies federal law when it "correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case." *Turrentine*, 390 F.3d at 1189 (quotation and alteration omitted). The Colorado district court in this case was not unreasonable to conclude that counsel's investigation was adequate. Counsel interviewed Dr. Bacon and recognized that it was important for an expert to review his methodology. Accordingly, counsel consulted Dr. Bernhard, who informed her that, although "there were some problems with the way Dr. Bacon

-9-

had conducted the interview and subsequent therapy," "that overall the job he had done was not too bad." Counsel also consulted repeatedly with her supervisor at the public defender's office and with at least two other experienced lawyers in preparing for the cross-examination of Dr. Bacon. One of the attorneys consulted had experience in trying and teaching defense attorneys how to try complex child sexual assault cases. In addition, counsel conducted her own extensive research into child interview techniques and brought to bear her experience from a recently completed sexual assault case in which she had cross-examined a psychiatrist on the proper methodology for interviewing children. Because the record demonstrates that Jones' counsel thoroughly prepared for trial, it was not an unreasonable application of federal law to conclude that counsel's pretrial investigation was not constitutionally ineffective for failure to seek out additional experts. *See Strickland*, 466 U.S. at 691 (noting that counsel is not ineffective for making a "reasonable decision that makes particular investigations unnecessary").

**B. Failure to call an expert witness at trial**

Jones next claims that his trial counsel was ineffective for failing to call an expert witness at trial to rebut Dr. Bacon's testimony. In addressing this claim, the state district court credited counsel's explanation that she feared calling an expert witness would open the door to evidence of four prior sexual assault allegations against Jones. Based on this testimony, the court found that counsel's

decision not to call an expert was "one of trial strategy." On appeal, the state appellate court concluded that "the record supports the trial court's finding that counsel's decision not to call a rebuttal expert was a tactical choice." The conclusion of the Colorado courts that counsel's decision was based on trial strategy is a finding of fact. *Bryan v. Mullin*, 335 F.3d 1207, 1221 n.17 (10th Cir. 2003). In reviewing a state court factual finding, this court "asks whether it represented an unreasonable determination of the facts in light of the evidence presented, and gives the state court's determination a presumption of correctness that can be rebutted only by clear and convincing evidence." *Hogan v. Gibson*, 197 F.3d 1297, 1306 (10th Cir. 1999) (citations, quotation, and alterations omitted).

Jones argues that the state district court's finding was unreasonable because counsel's fear of opening the door to past-acts testimony was "wholly without factual support and unfounded in the Colorado Rules of Evidence." After reviewing the record, this court cannot agree that the court's finding was either unreasonable or contradicted by clear and convincing evidence. Counsel testified that she consulted with three other attorneys about the evidentiary issues and was advised to avoid the risk of calling an expert. Prior to trial, the judge warned counsel in chambers that the prosecutor would be allowed to present the past-acts evidence "if the door is even so much as cracked," and the prosecutor stated that

if the door was opened he was "going to drive a truck through it."  Counsel feared that questioning an expert about Dr. Bacon's methodology might disclose the expert's knowledge that Dr. Bacon was aware of the allegations of prior sexual misconduct, and that this influenced the way Dr. Bacon interacted with R.F.  She was particularly worried that questions about Dr. Bacon's bias against Jones would open the door to admission of the foundation for the bias, which was Dr. Bacon's knowledge of the allegations of prior misconduct.  Counsel testified that admission of this evidence would have "gutted the defense."

Even if Jones is correct that Colorado evidentiary law would not ordinarily have allowed admission of the past-acts evidence, his counsel could legitimately have feared that she would unwittingly lay the groundwork for the evidence's admissibility.  Counsel's supervisor warned her before trial that calling an expert witness could "blow[] up on you," and counsel testified at the postconviction hearing that this was not a risk she was willing to take.  Jones argues that counsel could have neutralized the risk of calling an expert with a motion in limine, but counsel testified that she did not "take a lot of comfort" from pretrial rulings because the judge might change his mind if the direct examination of the expert took an unexpected turn.  Her supervisor agreed that in the "uncontrolled environment" of direct examination, counsel would be "running a huge risk that is not resolved by a limine motion" because the expert may inadvertently say

something that opens the door. Even Jones' expert on criminal defense at the postconviction hearing admitted that he could "imagine some way" the door could inadvertently be opened.

Jones contends that his counsel nevertheless risked opening the door to the same issues she was trying to avoid by questioning Dr. Bacon about his bias in cross-examination. Counsel testified, however, that she felt she would have far more control over the witness in cross-examination and could thus better avoid the risk of inadvertently opening the door. *See United States v. Maxwell*, 966 F.2d 545, 548-49 (10th Cir. 1992) (holding that defense counsel was not ineffective for foregoing expert testimony and relying instead on cross-examination in order to avoid opening the door to evidence of prior convictions)*; see also Reinert v. Larkins*, 379 F.3d 76, 95 (3rd Cir. 2004) (holding that counsel was not constitutionally ineffective for failing to call expert witness in rebuttal when counsel "thoroughly cross-examined" the state's witnesses); *Coleman v. Calderon*, 150 F.3d 1105, 1115 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998) (holding that counsel was not ineffective for failing to call an expert when counsel consulted with an expert prior to trial and conducted an effective cross-examination).[3]

_____

[3]Jones cites *Pavel v. Hollins*, 261 F.3d 210 (2d Cir. 2001), and *Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001), which involve decisions not to call expert witnesses when counsel was not versed in the subject matter of the case and did

Counsel was able to cover the same ground in cross-examination that she would have if she had called her own expert witness. As the state district court found, counsel's cross-examination was "thoroughly prepared and carefully done." Counsel effectively brought out through cross-examination Dr. Bacon's use of leading questions, as well as an admission that such methods were inappropriate when interviewing a child. Dr. Bacon admitted that he considered Jones to be the prime suspect almost from the beginning, that he did not strongly suspect R.F.'s biological father, and that he was not particularly listening for R.F.'s statements regarding her biological father. Counsel also elicited the fact that Dr. Bacon had failed to record statements by R.F. that were favorable to Jones or that tended to implicate someone else in the abuse. In addition, Dr. Bacon conceded that he had allowed R.F.'s father and others into the therapy sessions despite the fact that this practice could lead to contamination and

---

not consult with an expert prior to trial. *See Lindstadt*, 239 F.3d at 202 (noting that counsel was "hamstrung" by his failure to engage in any research prior to cross-examination of the state's expert witness). In contrast, Jones' counsel thoroughly prepared and conducted an effective cross-examination of Dr. Bacon. Jones also cites *Paine v. Massie*, in which this court concluded that counsel was deficient for failing to call an expert witness to testify on the subject of battered woman syndrome. 339 F.3d 1194, 1204 (10th Cir. 2003). In *Massie*, counsel neglected to call an expert to support the battered woman syndrome defense despite a state supreme court ruling that expert testimony was necessary to establish the defense. *Id.* at 1202. Unlike counsel in this case, the defense attorney in *Massie* did not have the option of cross-examining the state's expert witness, and faced no risk of opening the door to past-acts evidence by calling a defense expert.

coaching. Counsel displayed for the jury a videotape of one session that captured possible coaching of R.F. by her father's girlfriend.[4]

Jones' final remaining argument is that the state district court's finding was unreasonable because it ignored contemporaneous evidence that contradicted counsel's after-the-fact justification of her trial strategy. Jones points to a letter written by counsel stating that the videotaped sessions "need to be explained by an expert," and that, "[a]bsent expert testimony concerning Bacon's interviewing techniques and the responses of the child, the only expert testimony the jury will receive is that of Dr. Bacon's." This letter, however, was written before counsel had talked to Dr. Bernhard, who concluded that Dr. Bacon's methodology was "not too bad" and "could be addressed on cross-examination." Counsel testified that she wanted to have an expert evaluate whether Dr. Bacon's methodology "was a fertile area to pursue," but after consulting with Dr. Bernhard felt that the risk of calling an expert outweighed the possible advantages. Considering the

[4]Although Dr. Yuille criticized other methods of Dr. Bacon at the postconviction hearing that were not challenged in cross-examination, these methods did not produce evidence that was inconsistent with the defense's theory of the case. Jones' counsel never argued that sexual abuse did not occur, and Dr. Bacon's use of play therapy and his diagnosis of posttraumatic stress disorder did not particularly implicate Jones as the perpetrator of the abuse. Dr. Bacon's symbolic association of snakes with phallic symbols was, if anything, favorable to the defense's theory because Dr. Bacon admitted that R.F. mentioned snakes only in reference to her biological father, and never Jones.

strong presumption of competent performance, the state district court was not unreasonable to credit counsel's testimony.

Jones submits a separate letter written to his parents in which counsel stated that she was unable to retain Dr. Barbara Bebensee as an expert because "[Dr. Bebensee] did not believe that the job could be undertaken for the amount of money which had been budgeted, i.e. [$1000]." Counsel wrote that, because "time and money often dictate how much can be done at trial," she would "not be having any expert discussion on the video tapes" and "will simply have to handle that through cross-examination." Although this letter does appear to indicate that counsel's decision not to hire a witness was undertaken based on monetary rather than tactical considerations, Jones' counsel testified at the postconviction hearing that she was not completely forthcoming in her letter because she wanted to protect Jones' parents. If Dr. Bernhard had told her that Dr. Bacon's methods were grossly problematic, counsel testified that she would have hired an expert to go through the methodology on the stand. She testified that $1000 would have been adequate for this purpose, and that Dr. Bebensee's estimate of the cost of the project was "ludicrous." She further testified that she could have obtained more funding for an expert witness if she had needed it. Counsel's supervisor at the public defender's office agreed that economics did not factor into the decision as to whether to utilize an expert at trial. Based on this testimony, the Colorado

district court's finding that the decision was based on "trial strategy, not economics" was not unreasonable or contradicted by clear and convincing evidence.

Strategic or tactical decisions are presumed correct. *Strickland*, 466 U.S. at 690 (holding that strategic choices made after a thorough investigation of law and facts are "virtually unchallengeable"). Decisions based on trial strategy only rise to the level of ineffective assistance of counsel if they are "completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and alteration omitted); s*ee also Valenzuela v. United States*, 261 F.3d 694, 699-700 (7th Cir. 2001) (holding that "a lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review" (quotation and alteration omitted))*; United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." (quotation omitted)). Counsel's strategic decision in this case to rely on cross-examination to avoid risking the admission of the past-acts evidence was not completely unreasonable, and the state district court was therefore also not unreasonable to conclude that counsel was not constitutionally ineffective in this case.

## V. CONCLUSION

For the foregoing reasons, the district court's denial of Jones' application for writ of habeas corpus pursuant to § 2254 is **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge