**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 11 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TERESA VILENE PAINE,

    Petitioner - Appellant,

v.

NEVILLE MASSIE, Warden;
ATTORNEY GENERAL OF THE
STATE OF OKLAHOMA,

    Respondents - Appellees.

No. 01-6437

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 00-CV-1412-L)**

Matthew Austin Pring (and Timothy M. Hurley, with him on the briefs), Denver, Colorado, for Petitioner - Appellant.

David M. Brockman, (W.A. Drew Edmondson, Attorney General of Oklahoma and William R. Holmes, Assistant Attorney General, on the brief), Oklahoma City, Oklahoma, for Respondents - Appellees.

Before **KELLY**, **BALDOCK** and **BRISCOE**, Circuit Judges.

**KELLY**, Circuit Judge.

In March 1998, Petitioner-Appellant Teresa Vilene Paine was convicted by a jury in Oklahoma state court for the murder of her husband and was sentenced to life imprisonment. Since her conviction Ms. Paine has consistently maintained that she was denied the effective assistance of counsel at her trial. After the Oklahoma Court of Criminal Appeals ("OCCA") affirmed her conviction on direct appeal and denied rehearing, Ms. Paine filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal district court on the ineffective assistance claim. The district court denied habeas relief and a certificate of appealability ("COA"). After reviewing her claim we granted a COA and appointed counsel to represent her in this matter.

On appeal, Ms. Paine continues to argue that her trial counsel's performance was unreasonably deficient for failing to present expert testimony on battered woman syndrome ("BWS"). She asserts that counsel's deficient performance prejudiced her and that, as a result, she was denied her Sixth Amendment right to effective assistance of counsel as explained by Strickland v. Washington, 466 U.S. 668 (1984). She contends that the OCCA's decision denying her ineffective assistance claim is an objectively unreasonable application of Strickland and its progeny. We exercise jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253 and remand with instructions.

## Background

On February 11, 1996, at or about 4:00 a.m., Ms. Paine shot her husband three times with a single-shot 12-gauge shotgun at their home, killing him. II Trial Transcript ("TT.") at 104, 106-07; III TT. at 8. At trial, several witnesses testified about the various ways her husband abused her during their 12-year marriage. The testimony described abuse including: (1) various forms of verbal and mental abuse, including calling her "dumb ass," "slut," "bitch," and "whore" in front of their children and others, III TT. at 42-43, 153; IV TT. at 65-66; (2) repeated physical torment, including beatings that left visible bruising, III TT. at 33-35, 40-41, 55, 57-58, 154; IV TT. at 7, 9-10, 15, 83-84, 89; (3) threats to harm and/or kill her, their children and her family, particularly if she left him, and sometimes accompanied with threats to kill himself as well, III TT. at 38-40, 43-44, 48; IV TT. at 7-8, 16, 40, 43, 70-71; (4) forced sex with other people, IV TT. at 42-43, 47, 52, 57; (5) forced sex with a dog, III TT. at 103, 106; IV TT. at 42-43, 45; and (6) threats relating to forced sex with a horse, III TT. at 21, 23.

Several witnesses testified that Ms. Paine attempted to leave her home on numerous occasions to escape the abuse. The absences ranged from several hours to several weeks, but her husband would hunt her down and issue threats against her, her family and her friends if anyone helped her hide. III TT. at 32, 38-40, 48, 52; IV TT. at 7-8, 43. Although help was sought from the police on more

than one occasion, no action was taken. III TT. at 35-36, 48, 50-51, 54, 56-57. In contrast, more than one witness for the State testified to being unaware of evidence suggesting Ms. Paine's abuse by her husband. Id. at 105-06, 108, 119, 122. Other State witnesses also testified to threats made by Ms. Paine relating to her husband. Id. at 109-10, 119-21, 130.

On the date of the shooting, testimony adduced at trial indicated that Ms. Paine's husband had watched a pornographic movie, injected methamphetamine, and then directed her to have sex with their dog in a tin outbuilding. II TT. at 131-32, 164-65; III TT. at 15-16, 21; IV TT. at 45. She refused and he became very angry. IV TT. at 45. She left the outbuilding and returned to the house, fearing that he would pursue her and kill her. Id. When he attempted to enter the house at some point later, she shot him in the chest and he fell down, glaring at her and clenching his fists. II TT. at 151-52, 176. She then shot him again, hitting him in the side of the face; he continued to clench his fists. Id. She then shot him a third and final time in the chest. II TT. at 151-52; III TT. at 8-9.

Ms. Paine wiped the blood from the gun, and after collecting her children and some dice and cards, she drove herself to her mother's house. II TT. at 152, 162. She told her mother that she had shot her husband, and that if he was not dead, then she was. III TT. at 31. She then called the police and reported her actions in a calm manner. II TT. at 97. While in custody, she admitted to using

drugs recently and desiring more. III TT. at 21. Police officers reported that she at times acted calm and normal, and at other times acted inappropriately, including laughing and making odd comments, like "I told that son-of-a-bitch not to come in the house." E.g., II TT. at 128-29.

Ms. Paine was charged with first degree murder. At trial, her counsel proceeded on a theory of self-defense and offered an expert psychologist who gave an opinion that Ms. Paine was in genuine fear for her life at the time of the shooting. IV TT. at 45-46. However, her counsel offered no expert testimony regarding the effect of BWS or how such a condition might have affected the objective reasonableness of her subjective fear. Ultimately Ms. Paine was convicted of first degree murder in violation of 21 Okla. Stat. § 701.7 and was sentenced to life imprisonment.

On appeal to the OCCA Ms. Paine argued ineffective assistance for her counsel's failure to offer expert BWS testimony. Over the dissent of Judge Chapel, the OCCA affirmed in an unpublished summary opinion, disposing of her claim in one sentence: "[Ms. Paine] has failed to show that due to counsel's decision not to label her defense as that of 'battered woman' and present expert testimony on [BWS] the trial was rendered unfair or the verdict was rendered suspect or unreliable." R. Doc. 14, Ex. C at 2 (citing Strickland and Lockhart v. Fretwell, 506 U.S. 364 (1993)). In subsequently denying rehearing on this claim,

the OCCA noted the following:

> [D]efense counsel essentially presented a defense of "battered woman" at trial, presenting evidence of the victim's abusive treatment of [Ms. Paine]. However, this defense was referred to as "post-traumatic stress syndrome" rather than "battered woman syndrome." The record reflects this was a strategic decision by defense counsel. Under the standard set forth in Strickland . . . counsel's decision did not render the trial unfair or the verdict suspect or unreliable.

R., Order Denying Rehearing filed April 22, 1999, at 2-3.

Ms. Paine then sought habeas relief in federal district court on her ineffective assistance claim. She argued that although the OCCA had correctly identified the applicable standard, i.e., Strickland, it had nonetheless unreasonably applied it to her case, especially in light of Oklahoma law relative to BWS as discussed in Bechtel v. State, 840 P.2d 1 (Okla. Crim. App. 1992). On referral the magistrate judge applied Strickland and concluded that even assuming deficient counsel performance, Ms. Paine had not shown prejudice because she failed to show the probability of a different outcome. R. Doc. 19 at 8-9, 10-11. The district court agreed that the OCCA had not unreasonably applied federal law and denied Ms. Paine's habeas petition and her request for a COA. R. Doc. 21 at 1-2; R. Doc. 27 at 1-2. We granted a COA and Ms. Paine is now before us to appeal the district court's denial of her habeas petition.

<u>Discussion</u>

I.  <u>Standard of Review</u>

Because Ms. Paine filed her habeas petition after April 24, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") govern this appeal.  <u>Battenfield v. Gibson</u>, 236 F.3d 1215, 1220 (10th Cir. 2001). Under AEDPA, habeas relief:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Here, the OCCA identified the correct governing legal rule to apply (i.e., <u>Strickland</u>) and adjudicated Ms. Paine's claim on the merits, albeit in a summary opinion.  Therefore, it is the "unreasonable application" portion of AEDPA that is at issue in this appeal.  Aplt. Br. at 15; <u>see, e.g.</u>, <u>Bell v. Cone</u>, 535 U.S. 685, 698 (2002).

The Supreme Court has held that a state court decision is an "unreasonable application" of federal law if "the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."  <u>Williams v. Taylor</u>, 529 U.S. 362, 407 (2000).

- 7 -

It is not sufficient if the state court decision applied clearly established federal law erroneously or incorrectly; the application must be objectively unreasonable. Id. at 409; Lockyer v. Andrade, 123 S. Ct. 1166, 1175 (2003) (holding that "objectively unreasonable" is more deferential than review for clear error). However, the petitioner need not show that "all reasonable jurists" would disagree with the state court's decision. Williams, 529 U.S. at 409-10.

Even if a state court resolves a claim in a summary fashion with little or no reasoning, we owe deference to the state court's result. "Thus, we must uphold the state court's summary decision unless our independent review of the record and pertinent federal law persuades us that its result . . . unreasonably applies clearly established federal law." Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999). Unlike full de novo review, this "independent review" is deferential "because we cannot grant relief unless the state court's result is legally or factually unreasonable." Id.

## II.  Applying *Strickland* to These Facts

To decide if the OCCA's summary decision amounts to an unreasonable application of federal law, we must apply the Strickland framework to the facts before us to determine if the OCCA's application was not only wrong, but also objectively unreasonable. Doing so first requires an understanding of Oklahoma law regarding self-defense and BWS. How these concepts interrelate under

Oklahoma law is the focus of Bechtel v. State, 840 P.2d 1 (Okla. Crim. App. 1992).

    A.  Self-defense & BWS in Oklahoma: *Bechtel v. State*

    In Bechtel, the OCCA reviewed a trial court's decision to exclude expert testimony on BWS offered to support the defendant's claim of self-defense.  The OCCA made it clear that in Oklahoma, the "key to the defense of self-defense is reasonableness.  A defendant must show that she had a *reasonable* belief as to the imminence of great bodily harm or death and as to the force necessary to compel it."  Id. at 10 (emphasis added); id. at 6 (A "bare belief that one is about to suffer death or great personal injury will not, in itself, justify [self-defense].  There must exist *reasonable* grounds for such belief at the time of the killing. . . . Fear alone never justifies one person to take the life of another.") (emphasis in original).

    In Bechtel, a battered woman case very much like Ms. Paine's, the OCCA stated that the two requirements of self-defense, reasonableness and imminence, "can be understood *only* within the framework of [BWS]."  Id. at 6 (emphasis added).  Finding that BWS is a "substantially scientifically accepted theory," id. at 8, the OCCA concluded that expert testimony about it would assist the trier of fact in assessing how the experiences of a battered woman impact her state of mind at the time of the killing and in assessing the reasonableness of her belief that she was in imminent danger.  Id. at 6-8.  The OCCA did not stop there,

however.

After examining various psychological impacts of abuse on battered women, the OCCA determined that "[s]everal of the psychological symptoms that develop in one suffering from the syndrome are particularly relevant to the standard of *reasonableness* in self-defense." Id. at 10 (emphasis in original). As a result, an expert's testimony about how BWS "affected [a battered woman's] perceptions of danger, its imminence, what actions were necessary to protect herself and the reasonableness of those perceptions are relevant and *necessary* to prove" self-defense. Id. at 10 (emphasis added). Because "the issue is not whether the danger was in fact imminent, but whether, *given the circumstances as [the battered woman] perceived them*, [her] belief was reasonable that the danger was imminent," such expert testimony is all the more critical. Id. at 12 (emphasis added).

For these reasons, the OCCA concluded that a jury could not properly assess a battered woman's self-defense claim in the absence of the context provided by expert BWS testimony: "Misconceptions regarding battered women abound, making it more likely than not that the average juror will draw from his or her own experience or common myths, which may lead to a wholly incorrect conclusion. Thus, we believe that expert testimony on the syndrome is *necessary*

- 10 -

to counter these misconceptions." Id. at 8 (emphasis added)[1]; accord Dunn v. Roberts, 963 F.2d 308, 313-14 (10th Cir. 1992) (recognizing that an "expert [BWS] opinion is particularly useful and oftentimes necessary to interpret for the jury a situation beyond average experience and common understanding"). Therefore, although the OCCA held that the expert could not specifically testify to the ultimate fact of whether the battered woman's fear was reasonable, it concluded that a trial court's failure to allow expert testimony on BWS in such cases to provide necessary context is reversible error mandating a new trial. 840 P.2d at 9-10.

B.  The *Strickland* Framework

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated two elements a petitioner must show to demonstrate ineffective assistance. First, petitioner must demonstrate that her attorney's "performance was deficient" and "fell below an objective standard of reasonableness." Id. at 687-88. In applying this test, we review counsel's performance with great

---

[1]  Regarding such misconceptions, the OCCA noted the following: "Expert testimony on [BWS] would help dispel the ordinary lay person's perception that a woman in a battering relationship is free to leave at anytime [and] . . . would counter any 'common sense' conclusions by the jury that if the beatings were really that bad the woman would have left her husband much earlier. Popular misconceptions about battered women would be put to rest, including the beliefs that the women are masochistic and enjoy the beatings and that they intentionally provoke their husbands into fits of rage." Id. at 8 n.8.

deference and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. We consider all the circumstances, making every effort to "eliminate the distorting effects of hindsight," and to "evaluate the conduct from counsel's perspective at the time." Id. at 689. Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (quotations omitted). But "the mere incantation of 'strategy' does not insulate attorney behavior from review." Fisher v. Gibson, 282 F.3d 1283, 1296 (10th Cir. 2002). We must consider whether that strategy was objectively reasonable. Id. at 1305; Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000).

Second, petitioner must show that the trial counsel's deficient performance prejudiced her and deprived her of a fair trial with a reliable result, which requires a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also Bullock v. Carver, 297 F.3d 1036, 1043-54 (10th Cir. 2002).

C. Was Counsel's Performance Deficient?

(i) Counsel's Performance

As noted above, counsel for Ms. Paine proceeded on a theory of self-

defense.  The trial record reflects that counsel offered several witnesses to establish that Ms. Paine was abused and battered by her husband during their 12-year marriage.  E.g., IV TT. at 7-9, 15-16, 40-43, 45.  In fact, more than one witness for the State lent further support to this conclusion.  III TT. at 21, 33, 40, 43.  The record also reflects that counsel offered just one expert, Dr. Edith King, to testify on Ms. Paine's behalf.  Dr. King was an expert primarily specializing in assessing a defendant's competency to stand trial.  IV TT. at 22-23, 53-54.  She was not particularly experienced working with battered women.  Id. at 24.  In fact, counsel for Ms. Paine specifically disavowed any effort to qualify Dr. King as an expert either about battered women or about BWS.  Id. at 32, 33-34.

Understanding how Ms. Paine's counsel sought to use Dr. King's testimony is critical to this case.  Interestingly, this topic was the focus of a lengthy discussion between the parties and the court conducted outside the presence of the jury shortly after Dr. King began to testify.  The discussion began after the State's attorney objected to "[a]ny questioning regarding [BWS] or battered women in that [Dr. King] is not a qualified expert."  Id. at 27.  Ms. Paine's counsel responded: "[W]e're not going to elicit any opinion regarding whether or not [Ms. Paine] is a person that has BWS or anything of that nature."  Id.  Counsel stated that instead, Dr. King would testify that "she examined [Ms.] Paine . . . and essentially made an assessment of [her] personality traits . . . relevant to such

issues as . . . why would someone stay in such an atmosphere if the abuse were so bad; why would someone go back to someone who was treating them this way; essentially those things." Id. at 30.

When asked by the court if that would not actually be a BWS defense, id., counsel responded:

> If you mean am I going to ask [Dr. King] if [Ms. Paine] suffers from [BWS], no I'm not . . . . I'm not going to ask [Dr. King] to go into a dissertation about what [BWS] is per se . . . . All of my questions are tailored to [Ms.] Paine, not to women in general or battered women as a class.

Id. at 31. This made the court question the relevance of Dr. King's testimony, to which counsel responded that "[Dr. King's testimony] goes to show [Ms. Paine's] state of mind at the time of the occurrence . . . [and] during her relationship, to show her fear of the deceased, to show what effect that that would have upon [Ms. Paine's] actions." Id. at 33-34. Exasperated, the court lamented that it "can't believe we're in the middle of the trial where the defense has been and has always been that [Ms. Paine] was a battered woman and . . . no one's ready on this issue." Id. at 34. The court then asked both parties to bring their copies of Bechtel to a discussion off the record to discuss the use of Dr. King's testimony. Id. at 35.

Following the off-the-record discussion, Ms. Paine's counsel proceeded to question Dr. King about her evaluation of Ms. Paine. Regarding Ms. Paine, Dr.

- 14 -

King testified that she has "some addictive features, some highly dependent features, . . . features of post traumatic stress, . . . features of battering, . . . features of neglect. It's a mixed picture." Id. at 37. After testifying about Ms. Paine recounting the various forms of abuse perpetrated against her by her husband, id. at 39-44, Dr. King then focused her testimony on the events leading to the shooting. Specifically, counsel elicited the following testimony from Dr. King regarding her opinion about the genuineness of Ms. Paine's subjective fear on the night in question: "I think [Ms. Paine] was afraid he was going to kill her . . . . I was absolutely convinced [Ms. Paine] was scared to death and that he was going to come kill her." Id. at 45-46.

Although counsel used Dr. King to establish that Ms. Paine had "features of battering," at no point did counsel ask Dr. King whether, in her opinion, Ms. Paine suffered from BWS. Id. at 37. Furthermore, counsel at no point asked Dr. King to explain BWS or the effect it might have upon the objective reasonableness of a battered woman's subjective fear. Indeed, given the concession that Dr. King was not an expert on BWS, such testimony would have probably been inadmissible.

(ii) Was Counsel's Performance Objectively Unreasonable?

With the contours of counsel's performance well in hand, we now turn to the question of whether such performance was deficient under Strickland. From

Ms. Paine's perspective, the highest hurdle to clear on this issue is the presumption that her counsel acted reasonably and perhaps even strategically by not eliciting testimony about BWS from an expert. Such is the essential argument of the State on appeal. Aplee. Br. at 11, 14-15. As the following discussion shows, this hurdle is easily cleared.

As an initial matter, we think there can be little doubt from the record that Ms. Paine's counsel put a BWS theory in play. The State recognizes that Ms. Paine's counsel made a "back-door" attempt to use a BWS theory by trying to show that she was not only battered and abused, but was also an addicted, neglected and dependent person suffering from post-traumatic stress disorder ("PTSD"). Aplee. Br. at 10-12. By "back-door" the State presumably refers to counsel's efforts to characterize Ms. Paine as suffering from *more* than just BWS. Furthermore, the State admits that the trial court gave the BWS-specific jury instruction on reasonableness. Id. at 10, 15. The OCCA requires that this instruction "be given in all [BWS] cases," Bechtel, 840 P.2d at 11, so obviously the trial court viewed this case, based on the evidence before it, as a BWS case requiring the special instruction. See IV TT. at 140 (neither party objected to trial court's proposed jury instruction 33 which is the BWS-specific self-defense instruction, Okla. UJI-Cr 8-47); see also IV TT. at 34 (the trial court characterized the trial as one "where the defense has been and has always been

that [Ms. Paine] was a battered woman."). Essentially, the trial court and both parties at trial agreed that Ms. Paine was "battered" and that a BWS theory was put in play by her counsel. See Aplt. Br. at 17.

The State acknowledges, however, that Ms. Paine's counsel did not specifically ask her expert if Ms. Paine suffered from BWS, and did not ask the expert to explain BWS or the ramifications of BWS on the reasonableness of Ms. Paine's fear. Aplee. Br. at 10-11. And as we noted above, Ms. Paine's counsel made it very clear that the trial strategy did not include asking the expert to equip the jury with an understanding of BWS. III TT. at 31. The State also acknowledges that Ms. Paine's counsel labored extensively to establish that Ms. Paine's subjective fear was genuine. Aplee. Br. at 10, 12, 14-16, 17. However, the State points to not one instance of counsel attempting to establish the reasonableness of that fear in the context of Ms. Paine's being a BWS sufferer. E.g., Aplt. Br. at 19. In fact, counsel chose an expert that was not even qualified to render BWS testimony. See Aplt. Br. at 17; see also Bechtel, 840 P.2d at 9 (discussing such a requirement).

Given the OCCA's extensive focus on the "key" reasonableness component of a self-defense claim in a BWS case, Bechtel, 840 P.2d at 10-11, counsel's failure to offer expert BWS testimony to provide context for the jury on the reasonableness of Ms. Paine's subjective fear amounts to objectively

unreasonable performance. Counsel failed to apply <u>Bechtel</u> and failed to recognize its core teaching that expert testimony about how BWS "affected [Ms. Paine's] perceptions of danger, its imminence, what actions were necessary to protect herself and the reasonableness of those perceptions [were] relevant and *necessary* to prove" self-defense. <u>Id.</u> at 10 (emphasis added). Without expert testimony about how a BWS sufferer views the world, a complete disconnect existed that prevented the jury from assessing the reasonableness of Ms. Paine's conduct based on the "circumstances and from the viewpoint of the defendant," as Oklahoma law requires. <u>Id.</u> at 11 (quoting the specific self-defense jury instruction required for every BWS case).

Simply put, counsel failed to do something that the OCCA said was *necessary* to mount an effective self-defense claim given the jury's likely misconceptions about BWS. In <u>Bechtel</u>, the OCCA established the professional standard in Oklahoma for an attorney representing a battered woman claiming self-defense, i.e., the attorney must put on an expert to explain BWS to the jury. Recently, the Supreme Court concluded that an attorney's failure to follow "standard practice" to use state-provided funds for development of a social history report amounted to unreasonably deficient performance. <u>Wiggins v. Smith</u>, 539 U.S. ___, ___, 123 S.Ct. 2527, 2536 (2003) (relying solely on the testimony of the attorney to establish what constituted "standard practice"). In

this case, the professional standard at issue is decidedly more established and clear than that relied on by the Supreme Court in Wiggins. Here, the OCCA itself announced the professional standard. For these reasons, we have little trouble concluding that counsel's performance fell short of the professional standard and was objectively unreasonable.

The State attempts to support its argument that counsel's decision was strategic by relying on an erroneous reading of Bechtel. It claims that by "providing the subjective fear testimony through a PTSD expert," and therefore failing to put on a BWS expert, counsel strategically "deprived the State of [] potentially damning evidence." Aplee. Br. at 15. The State argues that "were a BWS defense pursued," Bechtel would mandate that "the accused would have to submit to an examination by an expert of the State's choosing and that this expert could testify in rebuttal." Id. Unfortunately for the State, Bechtel does not say that. Bechtel does, however, mandate the following in a BWS case:

> The defendant, who has submitted herself to psychological or psychiatric examination and who intends to use or otherwise rely on testimony resulting from said examination, *may be ordered, at the discretion of the trial court*, to submit to an examination by the State's expert witness, *upon application of the State*. The defendant's expert is permitted to be present and observe the examination. . . . Testimony of the State's witness shall be admitted only in rebuttal on matters covered by the expert for the defense and for the same purposes for which the defense expert's testimony was offered.

840 P.2d at 9 (emphasis added). It is obvious that the accused would not *have* to

submit to an examination by a State expert *unless* (1) the State applied for it and (2) the trial court, in its discretion, allowed it. Here a BWS theory was in play and Ms. Paine's counsel did use an expert to examine her and to testify about her having PTSD (which can encompass BWS). Under <u>Bechtel</u>, this would entitle the State to apply to have its expert examine Ms. Paine, but it is not known whether the State even tried to do so. However, no faithful reading of <u>Bechtel</u> supports the State's argument that Ms. Paine's counsel somehow made a *strategic* decision not to offer expert BWS testimony because of the rights it would give the State. Simply put, the State had those rights any way.

Finally, the State also appears to argue that counsel's failure to offer expert BWS testimony and the failure to establish definitively that Ms. Paine was in fact a BWS sufferer was reasonable because Ms. Paine simply could not qualify as a "battered woman." Aplee. Br. at 10, 15-16. In support of this argument, the State contends that there is no clearly documented pattern of abuse (i.e., medical treatment for abuse, calling the police, telling friends, etc.) and that Ms. Paine demonstrated a lack of fear and even physical aggression toward her husband. <u>Id.</u> at 13, 15-16. The State relies on certain witnesses who said they never heard her express fear but did hear her threaten her husband. <u>Id.</u> at 13-14.

This argument is specious and misses the point. As noted above, the State admits that the trial court gave the BWS-specific jury instruction on

reasonableness as required by Bechtel in "all [BWS] cases." Id. at 10, 15; Bechtel, 840 P.2d at 11. Given the evidence that Ms. Paine was battered, and the fact that the court and both parties at trial saw this as a BWS case, it simply makes no sense for the State to argue now that counsel somehow acted reasonably by failing to offer expert BWS testimony because Ms. Paine was not a "battered woman." Having reviewed Bechtel and the record in this case, we conclude that counsel's performance was deficient and fell below an objective standard of reasonableness and that the OCCA's reliance on trial strategy to excuse counsel's performance is an unreasonable application of Strickland.

### D. Was Ms. Paine Prejudiced by Counsel's Deficient Performance?

The magistrate judge and the district court concluded that the OCCA's application of Strickland was not unreasonable because of Ms. Paine's inability to show prejudice. Both courts were persuaded because "[a]lthough an expert in [BWS] might have helped Ms. Paine, she has not established a probability of a different outcome with the use of a specialist in the syndrome." R. Doc. 19 at 11; R. Doc. 21 at 1-2. Critical to the magistrate judge's conclusion was the idea that a BWS expert could not render an opinion on the ultimate fact of whether Ms. Paine's fear was actually reasonable. R. Doc. 19 at 11. There is no doubt that is true under Bechtel. 840 P.2d at 9. However, that is not the point.

Although the expert could not testify to the ultimate fact, testimony about

BWS from an expert was *necessary* (in the words of the OCCA, 840 P.2d at 8) to equip the jury to properly assess the reasonableness of Ms. Paine's fear. The magistrate judge emphasized that Dr. King did testify in support of the notion that Ms. Paine's fear was genuine. R. Doc. 19 at 10. But, without testimony about BWS from an expert, the jury was rendered unable to consider fully the evidence presented and to follow the jury instruction to assess the reasonableness of that fear based on the "circumstances and from the viewpoint of the defendant." Bechtel, 840 P.2d at 11 (quoting what is now Okla. UJI-Cr. § 8-47, the revised self-defense instruction required in all BWS cases). Ms. Paine's self-defense theory, the *only* theory offered, was effectively eviscerated by this failure.

The State's case cited in opposition, Seymour v. Walker, 224 F.3d 542, 557 (6th Cir. 2000), concluded that a failure to offer expert BWS testimony was not ineffective assistance. Aplt. Br. at 21. However, Seymour is inapposite because it is based on Ohio law which has a completely subjective self-defense test. Therefore, the usefulness of expert BWS testimony in Ohio is much different than its usefulness under Oklahoma's self-defense test given its reasonableness requirement.

Although the lesson to be drawn from Bechtel is obvious, the record before us is unclear on the last remaining element needed to convince us that Ms. Paine was prejudiced under Strickland: a qualified BWS expert willing to testify that

Ms. Paine was suffering from BWS at the time of the killing and willing to explain the impact of BWS on her state of mind and, specifically, to opine that Ms. Paine's belief that the use of deadly force was necessary to protect herself from imminent danger of death or great bodily harm could be considered reasonable based on her circumstances and viewed from her perspective. See Bechtel, 840 P.2d at 6-8. The magistrate judge recognized that Ms. Paine, who was incarcerated and proceeding pro se at the time, claimed that she had already been evaluated by a BWS expert who could testify favorably on her behalf. R. Doc. 19 at 7. Although it is not clear, apparently Ms. Paine's former habeas counsel[2] had the supporting materials in her possession. To further complicate matters, the magistrate judge also explained that parts of the state appellate record are missing. R. Doc. 18 at 2. Given the gaps in the record pertaining to this critical piece of missing information, we will remand to the district court to conduct a hearing during which Ms. Paine will be given the opportunity to produce a qualified BWS expert as described above.

If Ms. Paine is able to satisfy this showing on remand, the prejudice inquiry will be complete. Given the OCCA's insistence that juries entertain

---

[2] Ms. Paine was represented by counsel on her first habeas petition. That petition was dismissed without prejudice for being a mixed petition of exhausted and unexhausted claims. See R. Doc. 2 Attach. A. Ms. Paine proceeded pro se on her second (and instant) habeas petition until she received a COA and we appointed counsel to represent her.

misconceptions about BWS that must be overcome before a proper assessment of reasonableness is possible, there would exist at the very least a "*reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.*" Strickland, 466 U.S. at 694 (emphasis added).[3]

Therefore, if Ms. Paine satisfies the requirement on remand, the district court is instructed to grant a conditional writ of habeas corpus effective only if the State refuses to retry Ms. Paine within a reasonable time. If Ms. Paine does not satisfy the requirement, however, then the district court is instructed to deny the petition for failure to demonstrate prejudice under Strickland.

This case is REMANDED with instructions.

---

[3] Other courts agree with the OCCA. A few examples include Dunn, 963 F.2d at 313-14 (Tenth Circuit); Washington v. Janes, 850 P.2d 495, 502 (Wash. 1993); West Virginia v. Riley, 500 S.E.2d 524, 530 n.6 (W.Va. 1997); and People v. Christel, 537 N.W.2d 194, 196 (Mich. 1995).