United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 15, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

——————————————

No. 03-41495

——————————————

BETTY CARLENE JOHNSON EASLEY

Petitioner - Appellant

v.

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION

Respondent - Appellee

————————————————————————————————————————

Appeal from the United States District Court for the
Eastern District of Texas, Marshall
No. 00-CV-198

————————————————————————————————————————

Before KING, Chief Judge, and JOLLY and DENNIS, Circuit Judges.

PER CURIAM:[*]

Betty Carlene Johnson Easley, a state prisoner convicted of
murdering her husband, appeals the district court's denial of her
petition for writ of habeas corpus pursuant to 28 U.S.C.
§ 2254. After denying Easley's habeas petition in all respects,
the district court granted her application for certificate of
appealability. For the following reasons, we AFFIRM the district

——————————————

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

1

court's denial of Easley's petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 9, 1996, Betty Easley ("Easley") killed her husband, Jimmy Wayne Easley, by shooting him several times with a single-shot shotgun. On the night of the murder, Easley made a number of inculpatory statements to the police, including telling them "I meant to kill him." She also claimed that her husband had been trying to kill her.

At trial, Easley testified that the night before the murder, her husband drugged her and tried to force her to have oral sex. When she refused, her husband allegedly shoved more pills down her throat, saying that he would leave her alone if she took them. When Easley awoke, she allegedly heard her husband yelling at her from outside her bedroom, locked her bedroom door, and tried to use the bedroom telephone, but the line was dead. The next thing she allegedly remembers was her husband knocking on the door. She then recalls waking up in the hospital under arrest. At the hospital, doctors found a toxic level of butalbital, a barbituate, in her stomach. While Easley claimed that her husband had forced her to take the butalbital, medical evidence presented at trial suggested that she herself took it shortly before heading to jail (the arresting officers recalled letting her take a pill for her nerves before transporting her).

At trial, Easley's lawyer, Christina Wedding, told the jury that throughout her adult life Easley had made poor judgments

2

regarding her significant others. Easley then took the stand and testified about her past abusive relationships. She testified that she married Jimmy Wayne Easley on three separate occasions and that he tore up her furniture, beat her, pulled a gun on her, threatened to burn down their house, was arrested for assaulting her, and burned down his mother's house. Easley also testified about her marriages to four other men. Her marriage to one of these men, Michael Chatham, ended when both Easley and Chatham were life-flighted to the hospital after they stabbed each other following a violent night of drinking.

After Easley testified, Wedding called Stephanie Carter, Easley's daughter, to the stand. Carter attempted to testify about the abuse suffered by Easley in the past but was stopped when the prosecution objected to this testimony, arguing that only testimony related to Jimmy Wayne Easley's abuse was relevant to the murder. Wedding responded that the testimony was necessary to show Easley's state of mind on the night of the killing. The trial court disagreed, noting that Easley previously had testified that she did not remember her state of mind when she killed her husband. Wedding also stated that the prosecution would call Michael Chatham as a witness, and she said that if Easley's witnesses could not testify about past abuse, Chatham should not be allowed to testify about past abuse either. The trial court again disagreed, finding that Easley had opened the door to Chatham's impeachment and rebuttal testimony through

3

her own testimony.

After Carter testified about Jimmy Wayne Easley's abusiveness, the prosecution called Michael Chatham as a rebuttal witness. Chatham testified about his marriage to Easley, saying that Easley was the aggressor on the night of the stabbing. He denied stabbing Easley, testifying instead that he "was told" that Easley inflicted a knife wound on herself that night. Chatham also stated that Easley told him that she had beaten a prior boyfriend, Bill Gordon, senseless with a baseball bat after a fight.

The jury convicted Easley of murder. During the penalty phase, Easley was the only defense witness called to testify. She expressed remorse, saying that she would not have shot Wayne "in my right mind" and that she "did not take the pills myself." After hearing her testimony, the jury sentenced her to life in prison.

Easley appealed her conviction and sentence, which the state appellate court affirmed. Easley v. State, 978 S.W.2d 244 (Tex. App.--Texarkana 1998). The Texas Court of Criminal Appeals refused her petition for discretionary review. With the assistance of new counsel, Easley then filed a state habeas application, asserting that Wedding rendered ineffective assistance of counsel at trial. The trial court recommended that Easley's request be denied, and the Texas Court of Criminal Appeals denied her application. Again with the assistance of

4

counsel, Easley filed a 28 U.S.C. § 2254 petition, raising the same arguments that she raised in her state court habeas application. A federal magistrate judge reviewed Easley's § 2254 petition and conducted an evidentiary hearing as to whether Easley's trial counsel inappropriately failed to investigate and discover that Easley suffered from post-traumatic stress disorder ("PTSD"). The magistrate judge recommended that Easley's petition for writ of habeas corpus be denied. After conducting a de novo review, the district court denied her petition.

Easley filed a timely notice of appeal and an application for a certificate of appealability (COA) with the district court. The district court granted the COA on all issues presented in Easley's § 2254 petition. According to the district court, the issues set forth in Easley's petition are at least debatable in light of the Tenth Circuit's decision in Paine v. Massie, 339 F.3d 1194 (10th Cir. 2003) (holding that trial counsel's failure to offer expert evidence at trial that the petitioner suffered from battered woman syndrome may have constituted ineffective assistance of counsel).

## II. STANDARD OF REVIEW

Because Easley's federal habeas corpus petition was filed in September 2000, it is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C.

§ 2254; <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997). Under AEDPA, a federal court may only grant a habeas petition to an individual convicted in state court if the state-court judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (internal quotation marks omitted) (alterations in original). A decision is an unreasonable application of federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> In a habeas corpus appeal, this court reviews the district court's findings of fact for clear error and its conclusions of law de novo. <u>Busby v. Dretke</u>, 359 F.3d 708, 713 (5th Cir. 2004).

Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Under this test, the petitioner can only

6

prevail by showing: (1) that her counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) that her counsel's deficient performance prejudiced her defense. Id. at 687-94.

When analyzing an attorney's performance, this court is "highly deferential" and applies a "strong presumption" that counsel rendered an adequate performance and that the conduct was part of a reasoned strategy. Id. at 689. As for the prejudice prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. If the petitioner fails to establish either the performance or prejudice prong of the Strickland test, her ineffective assistance of counsel claim fails. Id. at 687-94.

### III. ANALYSIS

Easley argues on appeal that she was denied effective assistance of counsel because her trial counsel failed to: (1) discover and present evidence of her PTSD; (2) provide documentary proof that Easley was no-billed for assaulting Chatham; (3) investigate and present certain evidence regarding her PTSD, diminished capacity, and past abuse during the penalty phase; (4) object to Chatham's hearsay testimony; (5) ask for a limiting instruction regarding Chatham's testimony; and (6)

7

object to certain of the prosecutor's closing remarks.

### A.    Failure To Discover Easley's PTSD

Easley's primary argument on appeal is that Wedding failed to provide her with effective assistance of counsel because she did not hire an expert to discover and present evidence of the fact that Easley suffered from PTSD.  Easley contends that such evidence would have shown the jury that she thought she had to kill her husband and would have helped the jury to understand her history of substance abuse and bad relationships.  Easley also contends that Wedding knew before trial that she would insist on testifying about her prior abusive relationships, and the only way that Wedding could have redeemed this testimony was by having an expert witness place it into context.

In response, Wedding submitted an affidavit in the state habeas proceeding stating that she had obtained a court order for a mental health examination of Easley and that the court's neutral expert, Dr. William Crommack, found that Easley did not suffer from PTSD.  Additionally, Wedding reviewed Easley's medical records and applications for Social Security benefits, none of which indicated that she suffered from PTSD.  Based on this evidence, the state habeas court denied Easley's petition for writ of habeas corpus, finding that Wedding had thoroughly investigated Easley's case and had no information that "would alert [her] to the possibility that [Easley] had [PTSD] or that

8

would otherwise justify expert testimony at trial" regarding PTSD.  The district court denied Easley's habeas petition for similar reasons, finding that Wedding sufficiently discussed trial options with Easley, sufficiently investigated Easley's state of mind, and justifiably concluded that the available medical evidence indicated that Easley was not suffering from PTSD.

On appeal, Easley relies primarily on the Tenth Circuit's holding in Paine, 339 F.3d at 1197, in which the court found that plaintiff's counsel may have rendered ineffective assistance by failing to use expert testimony to support her claim of self-defense based on battered woman syndrome ("BWS").  In reaching this conclusion, the Tenth Circuit analyzed the applicable Oklahoma law on self-defense and BWS, noting that in Bechtel v. State, 840 P.2d 1, 8, 10 (Okla. Crim. App. 1992), Oklahoma's highest criminal court held that the failure to have an expert witness testify about an abused woman's BWS at trial is reversible error in Oklahoma, since such testimony is necessary to establish a self-defense claim in Oklahoma based on BWS. Paine, 339 F.3d at 1201-02 (holding that "counsel failed to do something that the [Oklahoma court in Bechtel] said was necessary to mount an effective self-defense claim given the jury's likely misconceptions about BWS").

Paine is readily distinguishable from the present case. First, Paine is not controlling precedent in this circuit.

Second, Paine turns on the fact that under Oklahoma state law, expert testimony is necessary to support a BWS defense. See Bechtel, 840 P.2d at 8, 10. No such requirement exists under Texas state law for a PTSD defense, making Paine's holding inapplicable in Texas. Third, Paine does not address trial counsel's duty to use an expert to investigate possible defenses prior to trial, but only discusses the use of an expert once a BWS defense already has been raised at trial. In the present case, no PTSD defense was ever raised at trial and, accordingly, Paine is not directly on point.

While Paine is distinguishable from the present case, several courts have addressed factual scenarios similar to the case at hand, concluding that counsel's failure to discover that a defendant suffered from PTSD was not ineffective assistance of counsel under Strickland when counsel, like Wedding, had investigated the defendant's history and had no reason to suspect the existence of PTSD. See, e.g., Campbell v. Coyle, 260 F.3d 531 (6th Cir. 2001) (holding that counsel's failure to investigate and discover petitioner's PTSD was not ineffective assistance of counsel when a clinical psychologist failed to diagnose the petitioner as suffering from PTSD and when counsel investigated the petitioner's history); Taylor v. Mitchell, 296 F. Supp. 2d 784 (N.D. Ohio 2003) (holding that counsel's failure to investigate and discover petitioner's PTSD was not ineffective assistance of counsel after a forensic psychologist failed to

10

diagnose him as suffering from PTSD). Additionally, in those cases in which Texas appellate courts have reversed convictions because trial counsel failed to request or were not provided with a mental health expert, evidence already existed indicating that the defendant's mental health would be a significant factor at trial. See, e.g., Woods v. State, 59 S.W.3d 833, 837-38 (Tex. App.--Texarkana 2001), rev'd on other grounds, 108 S.W.3d 314 (Tex. Crim. App. 2003) (trial counsel was aware that the defendant had a history of commitment to mental health hospitals since age thirteen and there was evidence that he heard voices and suffered hallucinations); In re R.D.B., 20 S.W.3d 255, 256-57, 261 (Tex. App.--Texarkana 2000) (the defendant had a frontal lobe brain injury, was taking medication for it, and a psychiatric evaluation indicated that the injury may have contributed to his behavior). Likewise, in all cases where this circuit has held that a trial counsel's performance was ineffective for failing to investigate properly an insanity defense, trial counsel knew that their clients had serious mental disorders. See, e.g., Bouchillon v. Collins, 907 F.2d 589, 596-97 (5th Cir. 1990) (counsel's failure to investigate a possible insanity defense was unreasonable because the defendant told him that he had been institutionalized several times and was taking medication for mental problems); Profitt v. Waldron, 831 F.2d 1245, 1247-49 (5th Cir. 1987) (counsel's failure to investigate an insanity defense was unreasonable because counsel knew that

11

the defendant previously had been adjudicated insane and the only viable defense was insanity).  Conversely, as both the state habeas court and the district court have noted in the present case, Wedding had no evidence of Easley's PTSD.  To the contrary, all information available to Wedding (e.g., Dr. Crommack's evaluation of Easley and Easley's prior medical records) suggested that Easley did not suffer from PTSD.

Additionally, in Black v. Collins, 962 F.2d 394, 401 (5th Cir. 1992), this court found that the petitioner's trial counsel, who knew of the petitioner's PTSD, was not ineffective for failing to investigate and present evidence of his PTSD, since counsel did not believe that his crime fit with the characteristics of PTSD and made a strategic choice not to pursue a PTSD trial strategy.  If the trial counsel in Black was not ineffective in choosing not to use documented proof of his client's PTSD, Wedding cannot be faulted for failing to pursue a PTSD defense, especially in light of the fact that Dr. Crommack's evaluation and Wedding's reasonable investigation indicated that Easley did not suffer from PTSD.  Accordingly, the district court correctly found that the state habeas court did not err when it concluded that Wedding did not render ineffective assistance of counsel by failing to investigate further a PTSD defense.

**B.     Failure To Offer Documentary Proof That Easley Was No-Billed For Stabbing Chatham**

Easley next claims that Wedding provided ineffective

12

assistance of counsel by failing to introduce at trial evidence that a grand jury in Galveston chose to no-bill her for stabbing Michael Chatham. The state habeas court and the district court found that Wedding did not render ineffective assistance of counsel by failing to introduce this evidence because Easley testified at trial that she was no-billed. Because Easley's testimony on this issue was uncontested, and because additional evidence of this fact would have been cumulative, the district court did not err when it concluded that the state habeas court correctly found that Wedding did not render ineffective assistance of counsel by failing to introduce such evidence. See Tex. R. Evid. 403 (stating that Texas law does not permit the "needless presentation of cumulative evidence").

C. **Failure To Introduce Mitigating Evidence During The Penalty Phase**

Easley additionally claims that she was denied effective assistance of counsel because Wedding failed to investigate and present evidence that could have been used at the penalty phase to mitigate her sentence. Specifically, Easley claims that Wedding failed to: (1) present evidence of her PTSD during the penalty phase; (2) interview all of her daughters and several of her friends and have them testify during the penalty phase about Wedding's violent past; and (3) present evidence at the penalty phase that she killed her husband while in a dissociative state caused by her PTSD, the drugs in her system, and her husband's

13

actions.

Because, as we have already held, Wedding did not provide ineffective assistance of counsel by failing to discover Easley's PTSD, the district court correctly concluded that the state court reasonably found that her failure to address PTSD at the penalty phase did not constitute ineffective assistance of counsel. With respect to Easley's other claims, this court has held that "a tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance." Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997). Similarly, the Supreme Court stated in Strickland that when a defendant has provided her lawyer with a reason to think that pursuing a certain investigation would be fruitless or harmful, "counsel's failure to pursue those investigations may not later be challenged as unreasonable." Strickland, 466 U.S. at 691. Under this standard, the district court did not err when it concluded that the state habeas court correctly found that Wedding did not act unreasonably when she chose to minimize testimony regarding Easley's violent past and her mental state on the night of the murder.[1]

---

[1] In her brief, Easley relies on Anderson v. Johnson, 338 F.3d 382, 391-92 (5th Cir. 2003), for the proposition that Wedding should have interviewed all of her potential witnesses. Anderson, however, only pertains to the failure to interview eyewitnesses to a crime--it does not address the failure to interview character witnesses. See id. at 391.

14

**D.  Easley's Remaining Arguments**

In Easley's three remaining arguments, she claims that Wedding improperly failed to: (1) object to Michael Chatham's hearsay statement regarding her self-inflicted knife wounds; (2) ask for a limiting instruction regarding Chatham's testimony; and (3) object to remarks made by the prosecutor during his closing argument about physical violence in Easley's past relationships. Easley claims that when these errors are examined cumulatively, there is a reasonable probability that she would have been acquitted but for them.

In this circuit, the cumulative error doctrine only applies when the errors themselves involve matters of constitutional dimension and "so infected the entire trial that the resulting conviction violates due process." Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir. 1996) (en banc). When this court evaluates whether the cumulative error doctrine applies to a set of facts, it "review[s] the record as a whole to determine whether the errors more likely than not caused a suspect verdict." Spence v. Johnson, 80 F.3d 989, 1001 (5th Cir. 1996) (internal quotation marks omitted). In this circuit, "[m]eritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised." Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1996) (quoting Derden, 978 F.2d at 1461). In the present case, the errors that Wedding may have committed in no way cast

15

doubt on the jury's verdict. The evidence presented at trial was simply overwhelming. For example, Easley herself admitted more than once to shooting her husband. The gun that killed him was found not far from where she was found. Easley admitted that her husband had not threatened to kill her on the night of the murder. She further claimed to not recall her state of mind when she killed him. Moreover, aspects of Easley's account of the night in question were inconsistent with the available evidence (e.g., she claimed her husband tried to break into her room and that he forced her to take pills, but no evidence of an attempted break in was found and the medical evidence suggested that Easley voluntarily took the pills after killing her husband). This court has held on several occasions that overwhelming evidence of a defendant's guilt supports the conclusion that she suffered no prejudice as a result of her counsel's performance and mistakes. See, e.g., United States v. Royal, 972 F.2d 643, 651 (5th Cir. 1992); United States v. Oakley, 827 F.2d 1023, 1026 (5th Cir. 1987) (per curiam). Because of the overwhelming evidence against Easley, no reason exists for thinking that the jury would have acquitted her had Wedding objected to Chatham's hearsay testimony, asked for a limiting instruction, and objected to the prosecutor's closing remarks. Accordingly, the district court did not err when it concluded that the state habeas court correctly found that Easley's remaining ineffective assistance of counsel claims fail because any error regarding them was

16

harmless.

## IV. CONCLUSION

For the foregoing reasons, this court AFFIRMS the judgment of the district court.