**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 6, 2005**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

DEREK KYLE FREEMAN,

> Petitioner - Appellant,

v.

JOHN GRUBBS, Warden; THE
ATTORNEY GENERAL OF THE
STATE OF OKLAHOMA,

> Respondents - Appellees.

No. 04-6008
(D.C. No. 02-CV-863-HE)
(W.D. Okla.)

ORDER AND JUDGMENT *

Before **LUCERO** , **McKAY** , and **ANDERSON** , Circuit Judges.

State prisoner Derek Kyle Freeman appeals the federal district court's

denial of his petition for habeas corpus relief filed under 28 U.S.C. § 2254. Upon

jury trial, Freeman was convicted in Oklahoma state court of first-degree

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.
After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination
of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

manslaughter, unlawful possession of a controlled substance and unlawful possession of drug paraphernalia. He was sentenced to twenty years, ten years and one year of imprisonment, respectively. On direct appeal he argued, among other things, that (1) the State's failure to arrest him before taking a blood sample rendered the sample and its test results inadmissible under Okla. Stat. tit. 47, § 751, and admission of the evidence violated his constitutional rights; (2) admission of various testimony violated the physician-patient privilege and denied him due process and a fair trial; and (3) cumulative error denied him due process and a fair trial. The Oklahoma Court of Criminal Appeals (OCCA) rejected these arguments and summarily affirmed Freeman's convictions and sentences. In post-conviction proceedings, the state court modified Freeman's sentence by suspending the sentences imposed for the possession offenses. The OCCA affirmed.

Freeman then sought federal habeas corpus relief, raising the same arguments he raised in his direct appeal. The federal district court, adopting the magistrate judge's recommendation, denied habeas relief. The district court also denied Freeman's request for a certificate of appealability (COA). We granted a COA on only three of the issues Freeman sought to assert on appeal: (1) Did the presence of two officers in the emergency room during Freeman's medical treatment result in the unauthorized taking of his blood? (2) Were Freeman's

constitutional rights violated by the admission of statements he made to medical personnel? and (3) Was there cumulative error?  Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we **AFFIRM** the denial of habeas relief.

The incidents leading to Freeman's arrest began about 9:00 p.m. on March 16, 1998, when Freeman was driving a vehicle that crossed the center line of a Norman, Oklahoma street and collided head-on with another vehicle driven by the victim, Elizabeth Boyls.  Freeman was unconscious for about ten minutes after the accident, and Boyls was also unconscious and injured.  Both were transported by ambulance to Norman Regional Hospital, with Freeman riding in the front seat of the ambulance.  Boyls later died from a heart rupture caused by the impact of the accident.

Norman Police Officers Paul Swanner and Matthew Hart met the ambulance at the hospital.  The officers testified that, when the ambulance arrived, they saw Freeman make motions with his hands suggesting he was putting something down his pants.  When asked what he was doing, Freeman replied that he was taking off his seat belt.  When Freeman got out of the ambulance, the officers observed that he was unsteady on his feet, was unresponsive to their questions, had a distant look in his eyes, and spoke in a thick and gravelly voice.  Believing that he was under the influence of intoxicants, and in light of the serious nature of the accident, the officers decided

3

to obtain a blood sample for analysis.

While Officer Hart was out of the room, Officer Swanner read Freeman the Implied Consent Test Request. The request advised Freeman that he had been arrested and that the arresting officer believed that he had been under the influence of intoxicants when operating his motor vehicle. The form used also requested Freeman's agreement to submit to a test for the presence of intoxicants and specifically precluded him from consulting with a lawyer before deciding whether to take the test. It further informed Freeman that failure to consent would result in revocation of his driver's license. After hearing the entire Implied Consent Test Request read to him, Freeman agreed to the blood test. The blood tests later showed both morphine and methadone in Freeman's blood.

Officer Swanner testified that Freeman's blood was drawn at 10:48 p.m. When Officer Hart returned to the room, he filled out the Oklahoma Department of Public Safety form concerning the blood test, noting a later arrest time of 10:54 p.m. At trial, Officer Swanner could not explain the time discrepancy. However, Officer Hart testified that he noted the arrest time after consulting his watch and that Officer Swanner had told him that he had already read the Implied Consent Test Request to Freeman.

After Freeman had agreed to take the test, Nurse Brigitte Squyres was preparing to draw Freeman's blood when she noticed marks on Freeman's arm.

4

On questioning by her, he admitted to prior drug use, as recently as a year before. Nurse Squyres also noticed Freeman had slurred speech and reacted slowly to her questions. When she asked him to disrobe, she observed that he became nervous and agitated. When Freeman removed his underwear, two syringes and a Tic-Tac container containing fourteen morphine tablets fell out. Officer Swanner took possession of these items, as well as a spoon, cotton balls and a green pill found in Freeman's clothing.

Eventually, Freeman admitted to Nurse Squyres that he was on morphine, and he told another nurse, Bryan O'Rourke, that he had injected opium. Nurse O'Rourke believed that Freeman was intoxicated because of the appearance of his eyes, his slow functioning, his slow or slurred speech, and his intermittent incoherence.

At 1:00 a.m., during a break in Freeman's medical treatment, Officer Swanner read Freeman his Miranda[1] rights. Freeman then agreed to discuss the accident and later gave a written statement. His statement indicated that earlier that day, he had purchased morphine and had injected eighty-five milligrams of the drug. He also stated that he had slept only five hours in the prior three days and admitted that due to his lack of sleep he had had difficulty staying awake while he was driving his vehicle that night, that he had faded out, that he had

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

5

drifted across the center line, and that he had awakened only after the accident had occurred.

If a claim is adjudicated on the merits in state court, we grant habeas relief only if the state-court decision was "contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1), (2). Federal courts presume that state court factual findings are correct, and place the burden on the petitioner to rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court did not decide a claim on its merits, a federal appellate court reviews the district court's legal conclusions de novo and its factual findings for clear error. Darks v. Mullin, 327 F.3d 1001, 1007 (10th Cir. 2003).

Before us, Freeman argues that the blood test evidence was inadmissible under state law because he had not been arrested at the time the blood was drawn. See Post v. State ex rel. Dep't of Pub. Safety, 889 P.2d 1290, 1291-92 (Okla. Ct. App. 1995) ("Oklahoma law requires, and appellate decisions of this state have consistently held, a valid arrest is necessary to authorize a police officer to request submission to chemical tests for blood alcohol."). He maintains that, because the affidavit prepared by Officer Hart showed a 10:54 p.m. arrest time, he

had not actually been arrested at 10:48 p.m. when his blood was drawn. In addition to the state law argument, Freeman also argues that his due process right was violated when the State failed to follow its rule requiring an arrest before taking blood. See Hicks v. Oklahoma, 447 U.S. 343, 346 (1980).

Federal courts do not grant habeas relief for state-law errors. Estelle v. McGuire, 502 U.S. 62, 67 (1991). If a state fails to follow its own rules, the failure gives rise to habeas relief only if the failure also was a violation of the due process guaranteed by the Constitution. Hicks, 447 U.S. at 346. To prove a denial of due process under Hicks, a habeas petitioner must show "the deprivation occasioned by the state's failure to follow its own law [is] arbitrary in the constitutional sense; that is, it must shock the judicial conscience." Aycox v. Lytle, 196 F.3d 1174, 1180 (10th Cir. 1999) (quotation omitted).

On direct criminal appeal, Freeman argued both that admission of the blood test evidence violated Okla. Stat. tit. 47, § 751 and that it violated his right to due process. The OCCA denied the claim, finding that Freeman was lawfully arrested prior to the extraction of his blood for testing. [2]

_____

[2]     Freeman argues that we should review this claim de novo. We disagree. In listing the issues, the OCCA recognized that Freeman had raised a constitutional claim. Although the court did not discuss the constitutional claim specifically when addressing this issue, its ruling encompasses it, and we still give deference to its decision. See Paine v. Massie, 339 F.3d 1194, 1198 (10th Cir. 2003) ("Even if a state court resolves a claim in a summary fashion with little or no reasoning,

(continued...)

We conclude that there was no due process violation. In order to prevail on his habeas claim, Freeman must show by clear and convincing evidence that the OCCA's factual determination that he was arrested prior to his blood draw was in error. § 2254(e)(1). To the contrary, in his appellate brief's statement of facts, Freeman acknowledges the following sequence of events. Nurse Squyres went to get the blood kit, Officer Swanner read the Implied Consent Test Request, Freeman consented to the blood draw, and Nurse Squyres drew his blood. The Implied Consent Test Request, which was read to Freeman, clearly stated that he was under arrest. In light of Officer Hart's testimony that he noted the arrest time by looking at his watch after his return to the ER bay and after Officer Swanner had read the Implied Consent Test Request to Freeman, the record evidence does not support a conclusion that OCCA's factual finding is in error. Furthermore, Freeman does not argue that his blood was drawn before Officer Swanner read the Implied Consent Test Request or before he had actually given his consent. Because the record shows that Freeman was arrested before his blood was drawn

---

[2](...continued)
we owe deference to the state court's result."); Cook v. McKune, 323 F.3d 825, 831 (10th Cir. 2003) (recognizing federal courts give deference to state-court decisions even if state court did not discuss and may not have been aware of Supreme Court precedent; relying on Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)). Even if we were to conclude that the OCCA did not address the constitutional claim on its merits, on de novo review, see Darks, 327 F.3d at 1012, we would still affirm.

8

and because there was no failure of the State to follow its own rules, there was no due process violation.   See generally  Schmerber v. California  , 384 U.S. 757, 768-70 (1966) (concluding police were justified in requiring person to submit to blood test because person was under arrest and circumstances indicated likelihood of success of test for alcohol).  Accordingly, we conclude the OCCA's decision was not contrary to or an unreasonable application of Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented.   See 28 U.S.C. § 2254(d)(1), (2).

Freeman also argues to us that his statements were protected by the physician/patient privilege set forth in Okla. Stat. tit. 12, § 2503 and that their admission violated his constitutional right to due process.  He maintains that his constitutional rights were violated because, although he made statements in the officers' presence, he had never consented to their presence, but had merely acquiesced because he had no choice in order to obtain medical treatment.

The OCCA rejected this argument.  The court found that Freeman's statements to the nurses were not privileged communications under Okla. Stat. tit. 12, § 2503.  Citing § 2503(A)(4), the court found that, because Freeman made the statements in the presence of officers who clearly were not involved in the medical diagnosis or treatment, Freeman did not intend for his comments to be confidential.  Lastly, the court found that the nurses' testimony about Freeman's

9

demeanor was properly admitted and relevant to the intoxication issue. [3]

"[S]tate court rulings on the admissibility of evidence may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." Walker v. Gibson, 228 F.3d 1217, 1239 (10th Cir. 2000) (quotation omitted), overruled on other grounds by Neill v. Gibson, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001). Nothing in the record indicates Freeman was deprived of a fair trial. He knew of the officer's presence, but he did not ask them to leave before making his statements or indicate that his statements were being made in confidence.

As for Freeman's argument that he has a due process right to have the state courts follow state procedural and substantive rules, see Hicks, 447 U.S. at 346, because there was no violation of state rules, it follows that there was no violation of his due process rights. Accordingly, we conclude Freeman cannot show by clearly established Supreme Court precedent that admission of his statements resulted in any fundamental unfairness or denied him due process of law.

Finally, Freeman argues that the cumulative errors in this case denied him a

---

[3] Freeman also argues that this claim should be reviewed de novo. Again, we disagree. The OCCA recognized that Freeman raised a constitutional claim. Because that court found no state-law error, it follows that the court decided there could be no constitutional error. Under these circumstances, see n.2 supra, we give deference to the OCCA's decision. But even if we were to review de novo, we would affirm.

10

fundamentally fair proceeding and due process. Finding no individual error, the OCCA decided there can be no accumulation of error. "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990). "Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors." Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998). Because there was no error, the OCCA's conclusion that there was no cumulative error was not contrary to or an unreasonable application of Supreme Court precedent.

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

11