**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0635-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CATELIN HICHOS,
a/k/a CATELIN D. PEREZ-
CARSTARPHEN,

     Defendant-Appellant.

_____

Submitted December 18, 2023 — Decided December 26, 2023

Before Judges Mawla and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-11-1425.

Joseph E. Krakora, Public Defender, attorney for appellant (Susan Brody, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Patrick Ryan McAvaddy, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Catelin Hichos appeals from a September 15, 2022 order denying her petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

Defendant dated Kevin Argueta. On July 29, 2016, defendant and Argueta attended a party where they both consumed a lot of alcohol and took drugs. They returned to Argueta's home early the next morning with their friend, Giovanny Garcia. Garcia took his phone, which he had left at Argueta's home, and departed. Defendant and Argueta went to Argueta's room. There, defendant used cocaine and Argueta smoked marijuana.

At some point, defendant and Argueta had sex. Defendant described it as "really rough" because Argueta was continuously grabbing and smacking her. She told Argueta to stop but he refused. Defendant claimed she grabbed a knife she found on the floor of Argueta's bedroom to defend herself and stabbed Argueta four times with it. She also said that at some point she went to the bathroom, checked Argueta's phone, and discovered he was cheating on her.

Following the stabbing, defendant wrapped the knife in a newspaper, took it and her belongings, and left Argueta's home. She called her friend, Katherine Calderon. Calderon told police defendant was hysterically crying when she called and said she thought she had hurt Argueta. Defendant spent the rest of

2

the day sleeping at Calderon's home. When Calderon returned from work, they walked to the Hudson River, and defendant discarded the knife in the river.

Calderon told police defendant said she went into Argueta's bathroom during the night and went through his phone. Defendant became upset and smashed Argueta's phone when she discovered messages between him and other women and videos of Argueta being intimate with other women. She then returned to the bedroom, woke Argueta up, and confronted him about the messages and videos on his phone. Dissatisfied with Argueta's answers, defendant began stabbing him. Calderon convinced defendant to turn herself into the police.

While defendant was at Calderon's house, Argueta's mother discovered her son's body on the floor in his room. When police arrived, they discovered a used condom and a broken cell phone in the room, both with blood stains on them. There was also blood on the door leading into Argueta's room and on the floor outside the room, near a dining table. While police were at the scene, defendant arrived at the police station and told officers "she had knowledge of the incident and wanted to confess."

A-0635-22

Argueta's brother denied there was a knife in Argueta's bedroom. He told police there was a collection of knives in the kitchen, and a knife was missing. He noticed it was missing "because it was a knife that was frequently used."

Defendant was charged with: aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1); possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and hindering apprehension, N.J.S.A. 2C:39-3(b)(1). Pursuant to a plea agreement, defendant pled guilty to aggravated manslaughter. The State would seek a prison sentence of fifteen years subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and five years of parole supervision. The defense would be free to argue for a ten-year sentence subject to NERA.

Prior to sentencing, defense counsel filed a memorandum detailing defendant's background and accomplishments. In addition to attaching thirty character letters, the memorandum recounted in detail how defendant's uncle had sexually abused her as a child. The uncle pled guilty to first-degree aggravated sexual assault. The memorandum also explained defendant's ex-husband "was charged with [a]ggravated [a]ssault, [w]eapons [o]ffenses[,] and [t]erroristic [t]hreats for grabbing [her] by the throat and holding a knife to her throat as she lay helplessly on the floor." At the sentencing hearing, defense

4

counsel argued defendant suffered from anxiety, depression, and post-traumatic stress disorder because of these incidents.

Defense counsel argued the incident with Argueta was the latest in a series of abuse she suffered at the hands of men. Counsel pointed out defendant had bruises on her body, which were indicative of "some very rough sexual intercourse" with Argueta, albeit consensual. Although defendant was not claiming self-defense, counsel argued the only way to reconcile defendant's otherwise peaceful, law-abiding life with Argueta's stabbing was for the court to conclude defendant "snap[ped]" when she killed Argueta.

The defense urged the judge to find mitigating factors three, four, five, seven, eight, nine, and ten, and aggravating factor nine. Defense counsel also asserted defendant was remorseful.

During her allocution, defendant described her relationship with Argueta as "one of deep passion, jealousy, and physical abuse." She noted Argueta "didn't hit . . . and punch [her] in a general way, rather he was abusive to [her] during sex." She claimed Argueta "enjoyed[] tormenting [her], often giving [her] flashbacks of the sex abuse [she] endured as a child." She "often had a hard time standing up for [herself], especially to men." Defendant said:

> I stabbed [Argueta] out of rage and jealousy as he
> was playing with my emotions and dealing with other

5

women. I'm not sure what overcame me. My uncle did horrible things to me and I was unable to react. My ex-husband beating me and I never reacted. Something overcame me this night and my life came pouring out.

The judge rejected the defense's narrative. He noted defendant claimed she was abused and was unable to walk away, "[y]et[] after she relentlessly stabbed . . . Argueta she had no difficulty collecting her belongings and simply walking out." He found the stabbing "wasn't a response to abuse. [Defendant's] actions in this case were fueled by anger and jealousy, not abuse." He concluded it was clear the sex was consensual and after it ended, defendant took Argueta's phone, became angry, and stabbed Argueta. The judge rejected the assertion the knife was in the bedroom, and concluded the evidence supported that it was in the kitchen. The judge concluded defendant likely retrieved the knife and stabbed Argueta while he was in bed, stating "I don't know if . . . Argueta was asleep, but he certainly wasn't attacking" defendant. Rather than call police, defendant left the home, leaving Argueta in his room dying, while his mother was in the house and "[h]elp, literally, was a room away." Defendant "took the knife . . . changed clothes and said nothing, called nobody to help [Argueta], despite the fact [defendant] knew he laid dying in his family's home . . . ."

The judge acknowledged there was "no doubt" defendant "had a difficult upbringing" and had been abused by her uncle and ex-husband, "[b]ut that's not

6

what happened here." Defendant assigned blame to Argueta and her remorse did not seem genuine. He emphasized, "[s]imply to say I'm sorry is not remorseful. There has to be a deep appreciation for the wrongfulness of one's conduct to be remorseful." The judge found aggravating factors one and nine "preponderate in weight over" mitigating factor seven, and sentenced defendant in accordance with the State's request for fifteen years' imprisonment subject to NERA and five years of parole supervision.

Defendant filed a pro se PCR petition, and in part, argued her sentence should be reconsidered because defense counsel was ineffective for not seeking mitigating factor twelve, N.J.S.A. 2C:44-(1)(b)(12), due to defendant's cooperation with law enforcement by confessing to the crime. PCR counsel filed a supplemental brief, which alleged defense counsel "was ineffective for failing to provide the court with an expert opinion regarding defendant's medical condition in support of mitigating factors[]" three, four, eight, and nine. PCR counsel asserted an expert report should have been provided to show defendant "suffered from Battered Women's Syndrome [(BWS)]." Counsel asserted defendant's case was like State v. Hess, 207 N.J. 123 (2009), which found defense counsel ineffective for not arguing any mitigating factors or presenting evidence of BWS at sentencing.

Defendant's petition attached a report by a psychologist, which opined defendant "was in a domestic violence situation perpetrated by [Argueta]. She was his victim; he was controlling her[,] and she feared for her life due to the episodes of battering she endured at his hands." The expert concluded defendant's relationship with Argueta "was significant for intimate partner violence in which she was the victim of battering, emotional abuse, coercion and control." He opined defendant "suffered from the effects of intimate partner violence, which include her belief and feeling that the perpetrator of intimate partner violence had power and control over her before, during and around the instant matter she was indicted for." Defendant "was experiencing depression, remorse, guilt and loss before, during or around the time she made a plea to avoid trial."

The PCR judge, who also took defendant's plea and sentenced her, issued a written opinion denying the petition without an evidentiary hearing. The judge distinguished Hess, noting defense counsel here "submitted a detailed pre-sentence memorandum and substantially argued . . . to take into consideration [defendant's] past abuse, particularly her uncle and former husband." Further, defense counsel "asserted the same mental issues at sentencing, which [the expert] discussed in his report made after [defendant's] sentencing . . . ." The

8

judge "was fully aware of [defendant's] past abuse and after reviewing the facts of [the] case in their entirety, concluded as [defendant] herself admitted on the record, that she stabbed . . . Argueta 'out of jealous[y] and rage.'"

Therefore, the judge concluded defendant failed to show a prima facie case of ineffective assistance of counsel since defense counsel "adequately argued [for the court] to consider and impose a lower sentence because of [defendant's] past abuse." The judge characterized defense counsel's argument as "detailed and extensive" and the expert report "contain[ed] no new information that would have impacted the sentence imposed." The lack of an expert report at sentencing did not prejudice defendant because the court considered and "rejected [defendant's] assertion that her past abuse caused her actions in stabbing . . . Argueta. . . . Moreover, the expert testimony [defendant] sought at sentencing would not have negated her own statement that she killed . . . Argueta 'out of jealous[y] and rage.'" The judge concluded defendant's "lack of satisfaction with the result rests in this [c]ourt's rejection of counsel's argument, not counsel's failure to adequately assert [BWS] at sentencing[,]" as was the case in Hess.

The judge also rejected the claim defense counsel was ineffective for not arguing mitigating factor twelve. Citing State v. Read, 397 N.J. Super. 598, 613

9

(App. Div. 2008), the judge found defendant's "cooperation with law enforcement [did] not constitute a proper application of mitigating factor twelve[]" because her "confession and subsequent statement to police . . . [were] of limited benefit to the State." Defendant "was the only perpetrator of the crime and her confession did not assist in solving another crime."

Defendant raises the following points on appeal:

> POINT I    [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HER CLAIM THAT HER TRIAL ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO SEEK EXPERT TESTIMONY THAT SHE SUFFERED FROM [BWS].

> POINT II  AN EVIDENTIARY HEARING IS REQUIRED BECAUSE THE COURT REFUSED TO FIND THAT TRIAL COUNSEL HAD BEEN INEFFECTIVE IN FAILING TO ARGUE AT SENTENCING THAT MITIGATING FACTOR TWELVE SHOULD HAVE BEEN APPLIED.

I.

Ineffective assistance of counsel claims must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 57-58 (1987). Strickland requires a petitioner show: (1) the particular way counsel's performance was deficient, and (2) that the deficiency prejudiced their right to a fair trial. 466

U.S. at 687; Fritz, 105 N.J. at 58. Claims of ineffective assistance of counsel in the plea bargain context are also reviewed under the Strickland test. Missouri v. Frye, 566 U.S. 134, 140 (2012).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Counsel's errors "even if professionally unreasonable" will not require setting aside a judgment if they had no effect on the judgment. Strickland, 466 U.S. at 691.

"[W]here the [PCR] court does not hold an evidentiary hearing, we may exercise de novo review over the factual inferences the trial court has drawn from the documentary record." State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014). We also review a PCR court's legal conclusions de novo. State v. Harris, 181 N.J. 391, 416 (2004).

## II.

In Point I of her brief, defendant asserts the PCR judge erred when he determined it was sufficient for defense counsel to present information about defendant's history of abuse without expert testimony. She notes in State v. Kelly, our Supreme Court held expert testimony was necessary to assist lay jurors to understand BWS. 97 N.J. 178, 209 (1984). Defendant claims the

A-0635-22

judge's explanation of her behavior exemplifies his misunderstanding of BWS. For instance, when the judge found defendant's "actions in this case were fueled by anger and jealousy, not abuse" he made the same error a lay person would make that could have been corrected by testimony of an expert witness.

Defendant claims an evidentiary hearing was necessary because the judge's misconceptions about the abuse she suffered showed he was biased and lacked objectivity. She notes the judge's remark—that she should have walked away rather than stab Argueta—ignored our holding in State v. Frost, 242 N.J. Super. 601, 611 (App. Div. 1990), where we held battered women cannot easily walk away from an abusive relationship and can be emotionally dependent on, or in a "love-hate relationship" with, the abuser. She claims the judge did not understand BWS because he oversimplified the relationship with Argueta as one involving infidelity while ignoring the physical abuse.

Defendant argues the judge heavily relied on defendant's own description of her conduct as resulting from a jealous rage rather than considering the learned opinion of an expert. She asserts Hess clearly applied because she suffered from abuse over the course of her entire life and her "mental state had been impacted by the abuse . . . resulting [in] disruption of her ability to tolerate

the actions that triggered her criminal conduct." Defendant urges us to remand for an evidentiary hearing before a different judge.

In order to conclude defense counsel was ineffective for failing to adduce expert testimony on BWS at sentencing we must be convinced that counsel's performance was "professionally unreasonable . . . ." Strickland, 466 U.S. at 691. In general, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." N.J.R.E. 702 (emphasis added). As we have highlighted, N.J.R.E. 702 is permissive.

Contrary to defendant's argument, Kelly does not mandate expert testimony on BWS. There, the Court stated

> a battering relationship embodies psychological and societal features that are not well understood by lay observers. Indeed, these features are subject to a large group of myths and stereotypes. It is clear that this subject is beyond the ken of the average juror and thus is suitable for explanation through expert testimony.
>
> [Kelly, 97 N.J. at 209.]

We are unconvinced the PCR judge did not understand the relevance of BWS here. The judge explained in detail why the record did not support a finding BWS played a dispositive role in defendant's sentence.

We also part ways with defendant's interpretation of <u>Hess</u>. There, the Court found BWS evidence would have supported the same mitigating factors defendant argued at sentencing, but that case does not mandate BWS evidence to support the mitigating factors if evidence of the abuse was otherwise presented. Hess's defense counsel failed to argue any mitigating factors. <u>Hess</u>, 207 N.J. at 140. The Court found counsel's representation fell so far below professional standards as to deprive Hess of her constitutional right to representation. <u>Id.</u> at 149. Here, defense counsel made no such errors. As we and the PCR judge have noted, defense counsel filed a detailed pre-sentencing memorandum and vigorously argued defendant's history of abuse in mitigation of the sentence. Having reviewed the expert report, we are in accord with the PCR judge's finding it added nothing new to the sentencing considerations.

BWS "describes a collection of common behavioral and psychological characteristics exhibited in women who repeatedly are physically and emotionally abused over a prolonged length of time by the dominant male figure in their lives." <u>State v. B.H.</u>, 183 N.J. 171, 182-83 (2005) (citing Lenore E.A. Walker, <u>Battered Women Syndrome and Self-Defense</u>, 6 Notre Dame J. L. Ethics & Pub. Pol'y 321, 326-27 (1992)). Although BWS is not listed as a diagnosis in the Diagnostic and Statistical Manual of Mental Disorders, over

14

time, it "has become widely accepted as admissible evidence in self-defense cases." Id. at 182-83. The Tenth Circuit has found defense counsel ineffective where self-defense was raised at trial, but counsel failed to ask the expert psychiatrist about BWS, despite offering extensive lay witness testimony about the defendant's fear, history of abuse, and even post-traumatic stress disorder. Paine v. Massie, 339 F.3d 1194, 1197 (10th Cir. 2003). The court ruled BWS expert testimony was necessary to understand "the ramifications of BWS on the reasonableness of [the defendant's] fear" which was an essential element of self-defense. Ibid.

Here, expert testimony was not required because defendant waived a self-defense claim. Moreover, having considered the facts in light of the sentencing decision, we are unconvinced expert testimony on BWS would have led the judge to find different aggravating or mitigating factors, or meaningfully altered the weight assigned to the factors found by the judge. The judge's findings reflect that he understood what defendant was attempting to argue about the effects of BWS. However, the facts and defendant's actions stood in stark contrast to the claim BWS impelled her to kill Argueta.

15

Defense counsel's representation at the sentencing was not constitutionally deficient. And the failure to present expert BWS evidence did not prejudice defendant because it would not have changed the outcome.

### III.

In Point II, defendant alleges her counsel was ineffective for failing to argue mitigating factor twelve. She asserts her surrender avoided law enforcement having to "expend time and manpower in searching for her." Although she discarded the knife in the river, her confession "obviated the need of the police to conduct a further search for it." Defendant argues the PCR judge's reliance on Read was misplaced because there, the defendant was already apprehended by police when he confessed. 397 N.J. Super. at 603.

In Read, we stated:

> [W]e question whether a confession qualifies as "cooperation" [for purposes of applying mitigating factor twelve], at least in the absence of any indication the confession identified other perpetrators or assisted in solving other crimes . . . . [D]efendant's confession was not entitled to any substantial weight in determining his sentence in view of its limited benefit to the State.
>
> [Id. at 613.]

We are unconvinced defense counsel's failure to argue mitigating factor twelve constituted ineffective assistance of counsel. Defendant's confession was

of limited benefit to the State because it did not help law enforcement identify other perpetrators or solve other crimes.

Moreover, our de novo review of the record does not convince us Argueta's death would not have been solved without the confession. The evidence showed defendant and Argueta would have been placed at the scene by Garcia, who returned with them to Argueta's home following the party. Police had other evidence defendant was with Argueta, in the form of the used condom and smashed phone discovered at the scene. Calderon also provided information to police regarding defendant's statement, namely, her admission that she "hurt" Argueta, and Calderon witnessed defendant dispose of the knife. Under these circumstances, mitigating factor twelve did not apply.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17